FILED
JAMES J. WALDRON
AUG 1 2 2014
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY_____ DEPUTY

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | CHAPTER 11 |
| IN RE G-I HOLDINGS, INC., et al, | | |
| (f/k/a GAF Corporation), | : | CASE NOs. 01-30135(RG) and 01-38790(RG) |
| | | (Jointly Administered) |
| Debtors. | : | |
| | : | |

|  |  |  |
|---|---|---|
| NEW YORK CITY HOUSING AUTHORITY, | | |
| | : | ADV. NO. 12-1903(RG) |
| Plaintiff, | | |
| | : | |
| vs. | | |
| | : | |
| G-I HOLDINGS, INC., | | |
| | : | **OPINION** |
| Defendant. | | |
| | : | |

APPEARANCES:

RIKER, DANZIG, SCHERER, HYLAND
   & PERRETTI, LLP
BY:  DENNIS J. O'GRADY, ESQ.
    MARK E. HALL, ESQ.
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962
*Co-Counsel for the Consolidated Debtor, G-I Holdings, Inc.*

QUINN EMANUEL,URQUHART & SULLIVAN, L.P.
BY:  ANDREW J. ROSSMAN, ESQ.
    SCOTT C. SHELLEY, ESQ.
    JACOB J. WALDMAN, ESQ.
51 Madison Avenue
New York, New York 10010
*Co-Counsel for the Consolidated Debtor, G-I Holdings, Inc.*

CARMODY TORRANCE SANDAK, HENNESSEY L.L.P.
BY:  MARC J. KURZMAN, ESQ.
707 Summer Street, Suite 300
Stamford, Connecticut 06901
*Co-Counsel for the Consolidated Debtor, G-I Holdings, Inc.*

FOX ROTHSCHILD, L.L.P.
BY: JEFFREY M. POLLOCK, ESQ.
Princeton Pike Corporate Center
997 Lenox Drive - Building 3
Lawrenceville, NJ 08648-2311
*Co-Counsel for New York City Housing Authority*

LAW OFFICES OF PHILIP J. GOODMAN, P.C.
BY: PHILIP J. GOODMAN, ESQ.
280 North Old Woodward - Suite 407
Birmingham, Michigan 48009
*Co-Counsel for New York City Housing Authority*

COHEN, PLACITELLA & ROTH, P.C.
BY: CHRISTOPHER M. PLACITELLA, ESQ.
127 Maple Avenue
Red Bank, New Jersey 07701
*Co-Counsel for New York City Housing Authority*

## ROSEMARY GAMBARDELLA, BANKRUPTCY JUDGE

MATTER BEFORE THE COURT

Before the Court is Consolidated Debtor G-I Holdings, Inc.'s Motion to Dismiss the New York City Housing Authority's Complaint for Injunctive and Declaratory Relief. A hearing was conducted on the matter on February 26, 2013. The following constitutes this Court's findings of fact and conclusions of law.

STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

*The Parties and Their Relationship:*

*New York City Housing Authority:*

New York City Housing Authority ("NYCHA") was and is an independent body corporate and politic created pursuant to the Public Housing Law of the State of New York to, *inter alia,* construct, maintain and operate public housing for lower income residents of New York City. Compl., ECF # 1, ¶ 6. NYCHA is the largest public housing authority in North

America. *Id.* ¶ 7. NYCHA's conventional public housing program has 345 developments throughout the City of New York with 2,702 residential buildings serving approximately 175,000 families and approximately 419,000 residents. The demand for public housing is constantly high, with waiting lists for housing averaging more than 30,000 applicants. NYCHA provides 12.6% of the City of New York's rental apartments and 9.2% of the City's population lives in its conventional public housing and apartments. In addition to residential units, NYCHA oversees a network of over 400 community facilities that include community centers, senior centers, health care centers, day care centers and head start educational centers. *Id.*

*G-I, the Bankruptcy Filing, and Confirmation of the Plan of Reorganization:*

G-I Holdings, Inc. ("G-I") is a corporation with its principal place of business in the State of New Jersey. *Id.* ¶ 8. On January 5, 2001, G-I filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Case # 01-30135, ECF # 1. The Court's docket entries for the same day reflect that the first meeting of creditors was scheduled for 9:00 a.m. on January 31, 2001 and that the last day to assert claims of non-dischargeability was April 2, 2001. *Id.* On August 3, 2001, ACI, a subsidiary of G-I, also filed a voluntary petition under Chapter 11. Case # 01-38790. On October 10, 2001, this Court entered an order directing the joint administration of the G-I and ACI bankruptcy cases. Case # 01-30135, ECF # 630.

The Official Committee of Unsecured Creditors (hereinafter "Committee") was appointed on January 18, 2001 by the United States Trustee pursuant to § 1102(a) of the Bankruptcy Code to represent those individuals who allegedly suffered injuries related to asbestos exposure from products manufactured by the predecessors of G-I. *See* 11 U.S.C. § 1102(a). On October 10, 2001, this Court appointed C. Judson Hamlin as the Legal

Representative, a fiduciary to represent the interests of persons who hold present and future asbestos-related claims against G-I.

G-I is the successor-in-interest to GAF Corporation ("GAF"), an entity named in approximately 500,000 asbestos-related lawsuits. *See G-I Holdings, Inc. v. Those Parties Listed On Exhibit A (In re G-I Holdings, Inc.)*, 313 B.R. 612, 621 (Bankr. D.N.J. 2004). In early 1994, GAF Building Materials Corporation, an indirect subsidiary of GAF, formed a new corporation as a wholly-owned subsidiary known as Building Materials Corporation of America ("BMCA"). *Id.* Pursuant to that transaction, BMCA received substantially all of the assets of GAF's roofing products business and expressly assumed $204 million of asbestos-related liability, with G-I indemnifying BMCA against any additional such liability. *Id.* BMCA, also an indirect subsidiary of G-I Holdings, is the primary operating subsidiary and principal asset of G-I Holdings. *Id.*

On August 21, 2008, G-I filed a Joint Plan of Reorganization. Case # 01-30135, ECF # 8190. On December 3, 2008, G-I filed a Second Amended Joint Plan of Reorganization and an Amended Disclosure Statement. Case # 01-30135, ECF # 8590. On January 12, 2008, NYCHA filed an objection, about five weeks after G-I filed its Second Amended Joint Plan, asserting that it did not "meaningfully address NYCHA's right to restitution," that it "completely ignore[d] New York law which supports NYCHA's claim for restitution," and that adopting it would mean that "[D]ebtor[s] will foist all costs attributable to Debtors upon NYCHA, and therefore, Debtors' Second Amended Joint Plan of Reorganization should be rejected as deficient." Case # 01-30135, ECF # 8752, at 2. NYCHA filed no further objections to the subsequent third through eighth amended plans.

On July 1, 2009, the Court entered the Amended Plan Confirmation Scheduling Order, which established, *inter alia*, September 4, 2009 as the deadline for parties in interest to file any objections to the Plan confirmation, and September 30, 2009 for commencement of the confirmation hearings. Case # 01-30135, ECF # 9278.

After a number of modifications to the Plan, G-I filed an Eighth Amended Joint Plan of Reorganization on October 5, 2009. Case # 01-30135, ECF # 9644. The District Court for the District of New Jersey and this Court held a hearing concerning confirmation of the Plan on September 30, 2009, October 5, 6, and 15, 2009, and November 7, 2009. Case # 01-30135, ECF # 9708-9712 (hearing transcripts). Counsel for NYCHA appeared at certain sessions of the confirmation hearing but never raised claims for administrative expenses, nondischargeability, or injunctive relief. On November 12, 2009, the District Court for the District of New Jersey, by Chief Judge Garrett Brown and this Court, entered the Confirmation Order, which also overruled NYCHA's objection. Case # 01-30135, ECF # 9787. NYCHA did not appeal the Confirmation Order, which became effective on November 16, 2009. The Plan became effective on November 17, 2009, as described in the November 20, 2009 notice of Plan confirmation ("Confirmation Notice"). Case # 01-30135, ECF # 9825.

The Confirmation Order and Plan established various deadlines and provided for the discharge of Claims. It also established that claims for administrative expense treatment would have to be filed by December 17, 2009, or "not later than thirty (30) days after the Effective Date." Case # 01-30135, ECF # 9787 ¶ 18. The Confirmation Order further provided that any claimant failing to make such a claim by the deadline "is and shall be barred, estopped, and enjoined from asserting any Claim against the Debtors pursuant to § 502(b)(9) of the Bankruptcy Code." *Id.* ¶ 23.

The Confirmation Order further provided that all Claims against the Reorganized Debtors would be discharged, and that all holders of such Claims would be barred from asserting them against Reorganized G-I. Case # 01-30135, ECF # 9787, ¶ 76. Any claimants holding Claims were also

> permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability pursuant to the Plan against the ... Reorganized Debtors, the Debtors' estates or properties or interests in properties of the Debtors or the Reorganized Debtors....

*Id.* ¶ 79.

Finally, the Confirmation Order defined "Claims" to include, *inter alia*, "(i) a 'claim,' as defined in section 101(5) of the Bankruptcy Code, against G-I or ACI, whether or not asserted... and (iii) *any rights to any equitable remedy*." Case # 01-30135, ECF # 9787, Ex. A, ¶ 1.1.43 (Plan at 8) (emphasis added).

*The Relationship:*

By order dated September 5, 2008, the Court set a bar date ("Claims Bar Date") of October 15, 2008 for potential creditors to file proofs of claim. Case # 01-30135, ECF # 8257. On October 10, 2008, NYCHA filed its Proof of Claim in the amount of $500,000,000 for "property damage" relating to the alleged presence of asbestos products, purportedly manufactured by G-I or its predecessors-in-interest within NYCHA's properties. The "asbestos property damage claim" purportedly included "hundreds of buildings owned by NYCHA, built with products identified as having been manufactured by the Debtors, or having been manufactured with asbestos fiber for which Debtors are legally responsible, and include tens of millions of square feet of vinyl asbestos floor tile ("VAT"), roofing materials, insulation materials." Rossman Decl., Ex. 3, ¶ 1. NYCHA further stated in its Proof of Claim that it "has

and will continue to incur costs necessary to abate hazards created by Debtors' products and replace the toxic and contaminating asbestos-containing building materials with non-toxic substitutes." *Id.* ¶ 3.    The asserted legal bases included, but purported not to be limited to, "laws of the State of New York and New Jersey permitting property damages claims based on causes of action including, but not limited to, negligence, breach of warranty, nuisance, restitution and indemnity." *Id.* ¶ 4.

On November 17, 2008, NYCHA submitted its "first supplementation to its Proof of claim." Rossman Decl., Ex. 4.  The supplemental submission included additional documents establishing that NYCHA buildings were constructed with asbestos containing materials, such as vinyl asbestos floor tile, roofs, thermal system insulation materials and products manufactured by G-I's predecessors and other companies. *See* Case # 01-30135, ECF # 10399; *In re G-I Holdings, Inc.*, 443 B.R. 645 (Bankr. D.N.J. 2010), *clarified by* 472 B.R. 263 (Bankr. D.N.J. 2012).  Neither NYCHA's Proof of Claim nor its Proof of Claim Supplement mentions claims for administrative expenses, non-dischargeability, or injunctive relief.  NYCHA confirmed in its opposition to G-I's objection to the Proof of Claim that NYCHA's Proof of Claim fully encompassed its various theories of recovery, explaining that "NYCHA [included with its Proof of Claim] a statement as to the nature of its claim, the theories of liability and basis for the damages alleged."  Case # 01-30135, ECF # 8733, ¶ 8.

*Asbestos:*

*The Dangers of Asbestos Exposure:*

In the subject Complaint, "G-I Products at Issue" are described thusly:

The term "ACMs" is used herein to describe all building materials containing asbestos fibers, including, but not limited to, vinyl asbestos floor tile ("VAT"), thermal systems insulation ("TSI"), roofing materials, raw asbestos fibers and other product types which were made with asbestos fibers.

As a part of the construction of the Housing Authority's buildings and structures, G-I's ACMs were placed on floors, roofs and used as insulation on boilers, water tanks, floors and other building or structural surfaces.

Compl. ECF # 1, ¶¶ 11, 12.

Asbestos fibers, such as those purportedly used in the products G-I sold for use in NYCHA buildings, are carcinogenic. *Id.* ¶ 13. Extensive evidence demonstrates that inhalation of asbestos can lead to mesothelioma, a diffuse cancer which spreads over the lung surface (pleural) or the surface of the stomach lining (peritoneal), lung cancer, asbestosis and other diseases which are serious, irreversible, and often fatal. *Id.* There is no known threshold of exposure to asbestos fibers below which exposure to asbestos is safe. *Id.*

Asbestos fibers are extremely durable and their size and shape permit them to remain airborne for long periods of time. *Id.* ¶ 14. Disturbance of asbestos-containing products, particularly in the course of removal, causes the release of asbestos fibers into the air where they may be inhaled. *Id.* Exposure to an inhalation of asbestos causes diseases which may begin to develop shortly after first exposure but which may not become manifest through serious physical symptoms, disability and death for a long period of time thereafter. *Id.* ¶ 18.

*Asbestos Regulations:*

The New York City Department of Environmental Protection, Bureau of Environmental Compliance, Asbestos Control Program, Asbestos Rules and Regulations, Chapter 1 of the Rules of the City of New York governs and controls all asbestos abatement activities in the City of New York, including removal, encapsulation, enclosure, clean-up and repair of all asbestos-containing materials, including floor tile, roofs and thermal system insulation. Compl. ECF # 1, ¶ 17.

NYCHA is mandated by city, state and federal laws to employ specific procedures to prevent the release of hazardous asbestos fibers from products in NYCHA's buildings. In the absence of the consistent and thorough use of these procedures, the asbestos fibers from such products would be released into the ambient air, exposing persons to the hazards and potentially life-threatening diseases caused by asbestos. *Id.* ¶ 19.

*G-I Holdings, Asbestos or Asbestos-Containing Products, and NYCHA:*

As early as the 1920's or shortly thereafter, the hazards of asbestos were becoming well-known to the medical and scientific communities as well as asbestos miners and manufacturers of ACMs, including G-I and its predecessors. Compl. ECF #1, ¶ 22. G-I mined, manufactured, processed, sold, marketed and placed into the stream of commerce asbestos and/or asbestos-containing products to be used primarily for flooring, roofing, and insulation purposes in buildings. *Id.* ¶ 24.

NYCHA alleges that G-I had knowledge of the hazards of ACMs but nevertheless continued from the 1930's until at least the 1980's to mine, manufacture and sell ACMs to NYCHA without any warning or disclosure as to the health hazards of its products. *Id.* ¶ 25.

*Adversary Proceeding:*

On September 7, 2012, NYCHA initiated the instant adversary proceeding against G-I seeking injunctive and declaratory relief. Specifically, NYCHA seeks to (1) obtain an affirmative mandatory injunction pursuant to Rule 7001(7) ordering G-I to take all necessary action to prevent future asbestos fiber release during removals of G-I's asbestos-containing materials as required by New York State, New York City and Federal law and for other equitable relief; (2) obtain a declaration of rights that NYCHA's claims for past and future relief are not subject to discharge under the Bankruptcy Code; and (3) obtain a ruling that NYCHA's post-

petition expenses to prevent unsafe conditions from arising on the removal of G-I's asbestos-containing products are administrative expenses under 11 U.S.C. § 503(b). Compl., ECF # 1, ¶ 1.

It is asserted therein that underlying, supporting and accompanying NYCHA's claim for injunctive relief are NYCHA's claims for equitable relief in the form of true restitution and indemnification, which this Court has ruled are allowable under the facts to be properly evidenced at a hearing. *Id.* ¶ 3 and ¶ 26 (citing *In re GI Holdings, Inc.*, 443 B.R. 645, 649 (Bankr. D.N.J. 2010)). As to the claim for restitution, NYCHA asserts that G-I and G-I's predecessors, acting for economic gain, and with disregard to public safety, have wrongfully caused NYCHA buildings to become and remain potentially dangerous as a direct result of their having mined, produced, marketed and/or sold G-I's ACMs used in NYCHA's buildings. Compl., ECF # 1, ¶ 27. By virtue of G-I's alleged wrongful conduct in the mining, production, marketing and sale of its ACM products for installation in NYCHA buildings, all occupants are at a risk of harm from asbestos released from G-I's products when they are disturbed in the ordinary course of the products' useful lives and upon removal. *Id.* ¶ 28. NYCHA is required by law to follow and implement specific procedures to prevent the release of asbestos fibers from G-I's products. *Id.* ¶ 29. In performing the mandated procedures necessary for the safe removal or other disturbance of asbestos hazards from G-I's products in NYCHA buildings, NYCHA asserts it has "borne a duty that, in law, equity and fairness, ought to have been and should be borne by G-I, specifically, the duty to prevent hazardous releases of toxic asbestos fibers and hazards to human health caused by such fibers used in G-I's products." *Id.* ¶ 31. Therefore, NYCHA asks that G-I be ordered to make restitution to NYCHA for both its past expenditures in performance of that duty and to undertake all future work required to continue performance of

such duty. *Id.* ¶ 33. Similarly, as to the claim for indemnification, NYCHA asks that G-I be ordered to indemnify NYCHA for both its past expenditures to perform that duty and be ordered to undertake all future work required to continue performance of that duty. *Id.* ¶ 39.

Count I of the Complaint states a claim for injunctive relief to prevent future harm. *Id.* ¶ 40. Specifically, NYCHA asks this Court to Order that: (1) G-I undertake the actions required to provide all necessary "safety precautions" in the future removal of asbestos-containing materials in NYCHA buildings; (2) G-I proceed with the abatement work with all deliberate speed; (3) G-I comply with the time and place restrictions currently employed by NYCHA on asbestos removal projects and to use only contractors approved by NYCHA; (4) G-I's use of NYCHA staff and personnel shall be compensated at the actual cost therefor; (5) the parties shall report quarterly to the Court on the progress of G-I's abatement work, and the Court shall retain jurisdiction until completion of all the work; and (6) such further relief as deemed necessary to enforce and administer the Court's findings and orders.

Count II of the Complaint seeks a finding that G-I's obligations to NYCHA are non-dischargeable. As to future obligations, NYCHA states that G-I's future obligation to be compelled by a mandatory affirmative injunction to undertake compliance with local, state and federal laws in the safe removal of all of its asbestos-containing products remaining in NYCHA buildings is not a "debt" and, therefore, is a non-dischargeable claim. *Id.* ¶ 48. As to liability for past damages, NYCHA alleges that G-I's predecessors sold asbestos-containing products for installation in NYCHA properties under false pretenses and false representations. *Id.* ¶ 50. Therefore, under the equitable principles of indemnity and restitution, Debtors' monetary liabilities and obligations for past expenditures by NYCHA are not dischargeable debts under the Bankruptcy Code pursuant to 11 U.S.C. §§ 1141 (c) or (d)(6)(A) and 523 (a)(2). G-I's

predecessors have already been held by a court of competent jurisdiction to have possessed knowledge of the health risks posed by exposure to finished products containing asbestos. *Id.* ¶ 56. *See GAF Corp. v. United States*, 19 Cl.Ct. 490 (1990).

Count III of the Complaint seeks a finding that NYCHA's past expenditures are administrative expenses under 11 U.S.C. § 503(b) and should be paid in full. NYCHA asserts that it is a "governmental unit" authorized under Article 3, Section 37 of the New York Public Housing Law to do all things necessary to carry out its powers. Compl. ECF # 1, ¶ 60. NYCHA's exercise of its powers to maintain safe, inhabitable dwellings was caused by the wrongful conduct of G-I. *Id.* ¶ 62. NYCHA asserts that the millions of dollars it incurred from and after the Petition Date, January 5, 2001, to comply with mandatory asbestos abatement procedures and in furtherance of its governmental powers, have been necessary to prevent actualization of an ongoing, imminent and substantial endangerment to human health and the environment, and on each occasion of the removal of any G-I ACM, those costs qualify as administrative expenses for which NYCHA is entitled to full payment. *Id.* ¶ 63.

NYCHA requests that this Court grant declaratory relief. Specifically, NYCHA asks this Court to make the following declaration of rights: 1. (a) NYCHA's claim for injunctive relief is not dischargeable; (b) NYCHA's claim for equitable relief in the form of true restitution and indemnification for past expenditures is for a non-dischargeable debt under 11 U.S.C. § 1141(d)(6)(A); and (c) NYCHA's post-petition expenditures to prevent the release and spread of toxic asbestos from Debtors' products qualify as an administrative expense under 11 U.S.C. § 503(b); and 2. the Court order such further relief as it deems necessary to enforce and administer its findings and orders.

*Motion to Dismiss:*

On November 7, 2012, G-I filed a Motion to Dismiss NYCHA's Complaint for Injunctive and Declaratory Relief. Memo. of Law in Support of Mot. to Dismiss, ECF # 6. G-I states that nearly three years after the Effective Date of G-I's Plan of Reorganization, and after the expiration of all relevant bar dates, NYCHA seeks to transform its Asbestos Property Damage Claims into post-petition and non-dischargeable claims. G-I characterizes NYCHA's Complaint as "an end-run around the treatment to which its Claims are entitled under G-I's confirmed Plan – Class 7, pre-petition, unsecured Asbestos Property Damage Claims payable, to the extent they are allowed, at 8.6%." *Id.* at 8. Despite NYCHA's claim for injunctive relief and right to reimbursement of its alleged abatement expenses at 100%, the Plan provides only for part payment of allowed Asbestos Property Damage Claims – not for injunctive relief or administrative claims for pre-petition acts. NYCHA did not appeal the confirmation of the Plan, and G-I argues that NYCHA is bound and precluded from re-litigating the Plan's provisions and effect.

G-I asserts that since filing its Proof of Claim, NYCHA has repeatedly characterized its claims as compensable in money damages, citing a number of documents, including *inter alia*, a "mock" or proposed complaint NYCHA e-mailed to G-I on January 28, 2009 (and attached as an exhibit to NYCHA's Objection Sur-Reply, *see* Case # 01-30135, ECF # 9312, Ex. 1). Memo. of Law in Supp. of Mot. to Dismiss at 12. Further, NYCHA's complaint for injunctive relief in the instant matter states that, should NYCHA prevail on its causes of action, "NYCHA's past reasonable costs will constitute a debt for money." *Id.* at 14-15 (citing Compl. ¶ 52). G-I asserts that the Complaint does not allege that money can be sufficient compensation for asbestos abatement that has already occurred but not for abatements of the same products in the same buildings that have not yet occurred. Memo. of Law in Supp. of Mot. to Dismiss at 15.

G-I's Motion to Dismisses raises three main arguments. First, NYCHA's newly-asserted claim for injunctive relief is barred and insufficiently pleaded. Second, NYCHA's purported claim for administrative expense treatment is barred and insufficiently pleaded. Third, NYCHA's purported claim for nondischargeability is time-barred by Bankruptcy Rule 4007(c).

As to G-I's first argument that NYCHA's newly-asserted claim for injunctive relief is barred and insufficiently pleaded, G-I raises three sub-points. First, NYCHA's claim for injunctive relief is barred by the Confirmation Order. NYCHA has acknowledged that its Proof of Claim – which makes no mention of injunctive relief – is the complete statement of its Claims. As the Confirmation Order and Plan make clear, any other or further claims against G-I are discharged. *See* Case # 01-30135, ECF # 9787, ¶¶ 76, 79. G-I argues that NYCHA cannot now evade the procedures for asserting and resolving Claims by commencing an adversary proceeding asserting a Claim for injunctive relief, citing *In re Johns-Manville Corp.*, 53 B.R. 346, 354 (S.D.N.Y. 1985). NYCHA had a full and fair opportunity to object to the Plan's discharge of its unasserted equitable claims. At the June 19, 2012 hearing, NYCHA attempted to bootstrap a claim for injunctive relief onto its Proof of Claim by suggesting that "true restitution" is a "form of injunctive relief," and, by implication, that NYCHA had timely asserted a claim for injunctive relief. Rossman Decl., Ex. 6 at 49:19-20. G-I argues that this assertion is incorrect. It is well-settled that a party cannot obtain injunctive relief where money damages are sufficient. Further, numerous courts have recognized the plain fact that claims for indemnity or restitution do not seek, and are not entitled to, injunctive relief, citing *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1324 (11th Cir. 2010), *reh'g denied* 410 F. App'x 295 (11th Cir. 2010), *cert. denied* 132 S. Ct. 91, 181 L. Ed. 2d 21 (2011); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc.*, 632 F.3d 1111 (9th Cir. 2011),

*cert. denied* 132 S. Ct. 112, 181 L. Ed. 2d 38 (2011); *In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Lit.*, 664 F.Supp. 2d 752, 763 n.2 (E.D. Mich. 2009), *order clarified on reconsideration* (Jan. 4, 2010). Even if the Plan had not discharged and barred "any rights to any equitable remedy," NYCHA's claim for injunctive relief clearly gives rise to "a right to payment." 11 U.S.C. § 101(5)(b). NYCHA's claims for restitution and indemnity seek money damages. NYCHA also fails to plead sufficiently that it lacks a monetary remedy. G-I asserts there is no factual or legal basis for transforming NYCHA's pre-petition claims for compensation into post-petition claims for injunctive relief – a result that is completely inconsistent with the terms of the Plan. Further, G-I asserts that NYCHA's barred claim for injunctive relief is another attempt to revive NYCHA's time-barred property damage and tort claims. Second, NYCHA has failed to allege facts suggesting it will suffer irreparable harm absent the injunction. G-I argues that even if NYCHA's claim for injunctive relief were not definitively barred by the Confirmation Order and Plan, NYCHA has also failed to adequately plead a claim for injunctive relief. An injunction should be denied unless the movant can demonstrate: (1) a likelihood of success on the merits; (2) it will suffer irreparable harm if the injunction is denied; (3) granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief, citing *Advanced Oral Techs., LLC v. Nutres Research, Inc.*, 2011 WL 13881, at *3 (D.N.J. Jan. 3, 2011). G-I asserts that delay in seeking an injunction casts substantial doubt on a claim that NYCHA will suffer harm absent the Court's intervention. In particular, G-I argues that delays in seeking injunctive relief to abate purported environmental hazards casts substantial doubt on those alleged hazards, citing *Henry v. St. Croix Alumina, LLC*, 2001 WL 754890 (3d Cir. Mar. 4, 2011). G-I asserts that NYCHA has been aware of the "irreparable" harm it claims ("contamination" and "exposure to its residents")

since, at the latest, sometime in the mid-1980s when New York City passed legislation to address the perceived hazards of abating asbestos products. Nonetheless, NYCHA waited until 2012 to ask the Court for an injunction compelling G-I to remediate these purported "irreparable" harms, and further to compel G-I to comply with abatement regulations that G-I asserts do not apply to it. Third, NYCHA has admitted repeatedly that its claim may be reduced to money damages and therefore NYCHA has a monetary remedy. G-I states that courts consistently reaffirm the principle that a claimant cannot obtain injunctive relief where a money damages remedy is available. G-I asserts that NYCHA has sought monetary relief for the past four years and cannot now assert that it has no monetary remedy.

As to G-I's second argument, that NYCHA's purported claim for administrative expense treatment is barred and insufficiently pleaded, G-I raises two sub-points. First, NYCHA's claim for administrative expense treatment is barred by the Confirmation Order. Pursuant to the Confirmation Order, the last day to submit a claim for administrative expense treatment was December 17, 2009, or 30 days after the Plan's Effective Date. NYCHA neither filed an administrative expense claim by this Administrative Expense Claims Bar Date, nor raised the issue before this Court, nor objected to the Administrative Expense Claims Bar Date, nor objected to the consequences of failing to file a claim by that date. Consequently, G-I asserts that NYCHA's claim for administrative expenses is barred by the terms of the Confirmation Order and the Plan. Second, NYCHA's claim for administrative expense treatment fails to state a legally cognizable claim under § 503(b) and applicable case law. G-I argues that NYCHA does not even attempt to plead that its claim meets the statutory criteria to be deemed an administrative expense. G-I asserts that NYCHA's Complaint merely renames as "administrative expenses" the same pre-petition Claims it has pursued for the past four years. G-

I contends that NYCHA's claim does not qualify as an administrative expense under any of the categories listed in the statute. Further, G-I asserts that NYCHA nowhere pleads that its claim relates to costs incurred to benefit or preserve the estate, nor does NYCHA plead that its claim arises from a "post-petition transaction" with the Debtors. Accordingly, NYCHA's claim for administrative expenses fails to meet the applicable criteria.

G-I's third argument is that NYCHA's purported claim for non-dischargeability is time-barred by Rule 4007(c). Rule 4007(c) fixes the time for filing complaints to determine the dischargeability of debts under § 523(c) as 60 days after the first date set for the meeting of creditors under § 341(a). G-I asserts that bar dates are "strictly construed" in the Third Circuit, citing *In re Trump Taj Mahal Assocs.*, 156 B.R. 928, 936 (D.N.J. 1993). In the instant matter, the first date set for a meeting of creditors was January 31, 2001, and the deadline for filing claims of non-dischargeability was set for April 2, 2001. NYCHA, however, filed its claim more than eleven years after the statutory bar date. Therefore, G-I argues that NYCHA's claim is time-barred.

*NYCHA's Opposition to G-I's Motion to Dismiss:*

On December 10, 2012, NYCHA filed a Memorandum of Law in Opposition to G-I's Motion to Dismiss NYCHA's Complaint for Injunctive and Declaratory Relief. ECF # 8. NYCHA asserts that the burden to investigate and implement arduous safety precautions is one that in equity properly belongs to Debtors. NYCHA asserts that it filed this claim for equitable and injunctive relief against Debtors because NYCHA seeks both (1) an injunction compelling Debtors to ameliorate the hazardous risk posed by disturbance of its asbestos containing products in the ordinary course, products NYCHA used based on Debtors' misrepresentation as to their safety and (2) true restitution in equity in the form of reimbursement for those expenses that

Debtors have foisted upon NYCHA by false pretenses and false representation, citing § 1141(a)(6)(A) and § 523. NYCHA asserts Debtors have been aware since October 31, 2008, that NYCHA's claim was for causes of action "including but not limited to ... restitution and indemnity." In two opinions of this Court, an Opinion filed December 14, 2010 (Case # 01-30135, ECF # 10399; *In re G-I Holdings, Inc.*, 443 B.R. 645 (Bankr. D.N.J. 2010)), and an Opinion filed May 17, 2012 clarifying the December 14, 2010 Opinion (ECF # 10633; *In re G-I Holdings, Inc.*, 472 B.R. 263 (Bankr. D.N.J. 2012)), the Court has ruled NYCHA has properly pleaded claims for indemnity and for restitution. In restitution, NYCHA asserts it seeks the equitable relief of reimbursement for expenses properly belonging to Debtors.

NYCHA raises seven arguments in opposition: (1) NYCHA's claims in the adversary complaint are timely; (2) NYCHA's claim under § 1141(d) was not discharged by the Confirmation Order; (3) G-I was on notice before confirmation of the Plan that NYCHA was seeking an order to require G-I to abate its asbestos products; (4) leave to amend a bankruptcy claim should be "freely given;" (5) even applying an "excusable neglect" standard under Rule 9006(b)(1), NYCHA should be permitted to amend its Proof of Claim; (6) a debtor obligated to remediate contamination it caused may not have that obligation discharged in bankruptcy; and (7) NYCHA's claim for injunctive relief states a claim upon which relief can be granted.

As to NYCHA's first argument, that NYCHA's claims in the adversary complaint are timely, NYCHA raises three sub-points. First, NYCHA's requests for relief in the adversary complaint are not barred by Rule 4007(c) and may be filed "at any time." NYCHA asserts there is no deadline for a creditor not scheduled if, as here, the creditor had no notice, citing *In re Beaty*, 306 F.3d 914 (9th Cir 2002). Further, NYCHA argues that beyond the failure to give NYCHA notice, Debtors' invocation of Rule 4007(e) fails because NYCHA's claims are non-

dischargeable obligations. NYCHA's Complaint does not seek a determination of dischargeability under § 523. Rather, NYCHA's request for a determination of non-dischargeability arises under case law denying discharge for injunctive relief to prevent threats of harm to public health and safety and under 11 U.S.C. § 1141(d)6)(A), neither of which NYCHA asserts are subject to filing deadlines under Rule 4007. Further, NYCHA argues that in G-I's Motion to Dismiss contains no "particularization" of any prejudice which G-I would suffer if NYCHA was permitted to move forward with the adversary complaint. Without a showing of any "extraordinary circumstances" or "particularized showing" of prejudice to support a laches defense, NYCHA asserts that G-I's claim that the Complaint is time barred must be rejected. Second, because NYCHA was not scheduled as a creditor nor made aware of the G-I bankruptcy until September 2008, its claim for non-dischargeability is timely pursuant to § 523(a)(3)(B). Pursuant to § 523(c), a complaint may be filed at "any time" to determine the dischargeability of debts for unlisted debts, for restitution, and for debts not discharged under the broad scope of § 523's exceptions to discharge. Here, NYCHA asserts that the obligation owed by G-I was neither listed nor is it dischargeable. Further, NYCHA asserts it has provided uncontroverted proof that it acted expeditiously once it learned of G-I's bankruptcy. NYCHA argues that equity does not permit debtors to seek relief when they have unclean hands, as here, because G-I failed to provide proper notice to NYCHA. Therefore, NYCHA asserts that even if the Court construes NYCHA's claim to fall under § 523, which NYCHA disputes, G-I's motion should still be denied as NYCHA was unable to make a "timely request for a determination of dischargeability of such debt." 11 U.S.C. § 523(a)(3)(B). Third, NYCHA's requested relief based on G-I's predecessor's "false pretenses" is not a complaint under § 523(c). NYCHA asserts that the discharge provision of the Bankruptcy Code, § 523, applies to individuals. However, denial of

discharge of the debt of a "corporation" which acted under "false pretenses" arises under §

1141(d)(6)(A) and that here the Debtors are corporations and NYCHA a "governmental unit"

under the meaning of that statute. Further, NYCHA asserts that a request to have a debt ruled

non-dischargeable pursuant to § 1141(a)(6)(A) may be filed "at any time." NYCHA asserts that

it was deceived by Debtors that the floor tiles and roofing materials sold by Debtors as safe to

use such that it was a false or fraudulent transaction because Debtors knew more about the risk

of asbestos exposure than they disclosed to buyers. Finally, § 523 does not relieve Debtors of a

claim for true restitution, citing *Kelly v. Robinson*, 479 U.S. 36, 41-42 (1986).

As to NYCHA's second argument, that NYCHA's claim under U.S.C. § 1141(d) was not

discharged by the Confirmation Order, NYCHA argues that G-I's argument that the

Confirmation Plan bars NYCHA's claims fails because of the 2005 amendments to the

Bankruptcy Code. NYCHA asserts that the 2005 amendments under § 1141 render claims such

as those asserted here by NYCHA non-dischargeable. Specifically, pursuant to the terms of 11

U.S.C. § 1141(d), a creditor like NYCHA who has a debt exempted from discharge is not subject

to the terms of a confirmed plan, citing *In re Howell*, 84 BR. 834 (Bankr. M.D. Fla. 1988).

NYCHA's third argument is that G-I was on notice before confirmation of the plan that

NYCHA was seeking an order to require G-I to abate its asbestos products. Specifically, nine

months before the September 30, 2009 Confirmation Order, NYCHA asserts that G-I was put on

notice that NYCHA sought relief which included a demand that: "…G-I in the future establish

and pay for a program for the removal of asbestos hazards caused by G-I ACMs in Housing

Authority buildings." *See* NYCHA's Opp. to Mot. to Dismiss at 12 (citing Ex. 1 to Sur-Reply on

Behalf of NYCHA, July 17, 2009, Case # 01-30135, ECF # 9312, Ex. 1 ¶ 38, draft "Complaint

and Jury Demand.") NYCHA cites the principle that courts should liberally construe pleadings

in a manner which does "substantial justice" and that motions to dismiss based on pleading errors are to be disfavored. *In re Little*, 220 B.R. 13, 17 (Bankr. D.N.J. 1998). Here, NYCHA asserts G-I has been on notice for a long time that NYCHA is seeking injunctive relief and therefore substantial justice will be done by finding that G-I had sufficient notice of NYCHA's claims.

NYCHA's fourth argument is that leave to amend a bankruptcy claim should be "freely given" absent a showing that the claimant has acted in bad faith or that there is true prejudice to Debtors. NYCHA states it is asserting no new claims and that Debtors are not "surprised." NYCHA argues that the Court should permit amendment to NYCHA's Proof of Claim to more specifically delineate both NYCHA's request for injunctive relief, as well as its contention that both aspects of its claim are not non-dischargeable, because: (1) injunctive relief is non-dischargeable under *In re Torwico Electronics v. New Jersey Department of Environmental Protection*, 8 F.3d 146 (3d Cir. 1993), *cert. denied by Torwico Electronics, Inc. v. New Jersey Department of Environmental Protection & Energy*, 511 U.S. 1046 (1994), and its progeny, and (2) G-I's predecessors' conduct in acting under "false pretenses" disqualifies G-I from discharge of NYCHA's claims pursuant to § 1141(d)(6)(A).

NYCHA's fifth argument is that even applying an "excusable neglect" standard under Rule 9006(b)(1), NYCHA should be permitted to amend its Proof of Claim. Whether to permit amendment to a timely-filed claim is within the discretion of the bankruptcy court, citing *In re Brown*, 159 B.R. 710 (Bankr. D.N.J. 1993) for a list of factors bearing on a request to amend a proof of claim. NYCHA argues that there is no basis to find any prejudice to G-I by permitting NYCHA to amend its proof of claim to include specific requests for injunctive relief and non-dischargeability. Further, NYCHA asserts that G-I cannot show that it relied to its detriment on

NYCHA's original proof of claim. Therefore, NYCHA requests to amend the proof of claim to the relief sought in the adversary complaint.

NYCHA's sixth argument is that a debtor obligated to remediate contamination it caused may not have that obligation discharged in bankruptcy. NYCHA contends there is a distinction between a cleanup order seeking payment of costs and a demand for an injunction seeking to end or ameliorate contamination, citing *In re Chateaugay*, 944 F.2d 997 (2d Cir. 1991) and *In re CMC Heartland Partners*, 966 F.2d 1143 (7th Cir. 1992). Because an injunction arises in equity, the claim is non-dischargeable even if Debtors will have to expend funds to comply with the injunctive order, citing *United States v. Apex Oil Company, Inc.*, 579 F.3d 734 (7th Cir. 2009), *cert. denied*, 131 S. Ct. 67 (2010). NYCHA asserts that environmental cleanup injunctions addressing remedying ongoing pollution are a non-dischargeable obligation even if the agency obtaining the injunction has a statutory right to recover remedial costs, citing *In re Mark IV Indus., Inc.*, 459 B.R. 173, 181 (S.D.N.Y. 2011). NYCHA asserts there is "substantial" case law supporting NYCHA's request for injunctive relief and that an injunction ordering debtors to abate or clean up ongoing threats to public health is not dischargeable, citing *Torwico*. NYCHA contends that while Debtors correctly point to the fact that the Confirmation Order barred any claims consistent with § 101(5) of the Bankruptcy Code, the equitable remedies § 101(5) bars are not claims like the one in *Torwico* or the one asserted here by NYCHA. NYCHA argues that G-I's obligation to remediate the ongoing threat from hazardous floor tile and other asbestos-containing products for which it and its predecessors are responsible is compelled by the equitable principle that parties responsible for ongoing threats to health and safety ought to be compelled to eliminate them. Finally, NYCHA asserts that given the extensive line of federal cases exempting injunctive-driven clean-ups from bankruptcy discharge, NYCHA's request for

such relief is outside the confines of Rule 4007(c) and "may be filed at any time," pursuant to 4007(b).

NYCHA's seventh, and final, argument is that NYCHA's claim for injunctive relief states a claim upon which relief can be granted. Specifically, NYCHA argues that Count I of the Complaint for Injunctive and Declaratory Relief sufficiently alleges the elements required to support a mandatory, affirmative injunction directing G-I to take over the task of preventing hazardous exposures to asbestos fiber from its products. "Imminence of threat" is an element for a cause of action for indemnification and is also a consideration of whether mandatory injunctive relief should be ordered. NYCHA contends that the threat from asbestos is imminent because it is real and when a release occurs, that threat is immediate to thousands of persons living in the hundreds of NYCHA residential housing units, citing *United States v. Waste Industries, Inc.*, 734 F.2d 159 (4th Cir. 1984); *Forsham v. Califano*, 442 F. Supp. 203 (D.D.C. 1977); and *Cox v. City of Dallas*, 256 F.3d 281 (5th Cir. 2001) in support of the proposition that an "imminent hazard" applies to events which took place at some time in the past but which continue to present a threat to the public health or the environment. In order to obtain injunctive relief, a party must also demonstrate irreparable harm. However, NYCHA contends that in cases brought pursuant to environmental or public health statutes, "the primary focus shifts from irreparable harm to concern for the general public interest." *United States v. Bethlehem Steel Corp.*, 38 F.3d 862, 868 (7th Cir. 1993).

NYCHA asserts that while it has a duty to maintain safe and habitable buildings for its tenants, workers and others, G-I also had duties to test its products and issue warnings about the dangers associated with its products, citing *Frankson v. Brown & William Tobacco Corp.*, 2004 WL 1433068 (N.Y. Sup. Ct. June 22, 2004), *aff'd by Frankson v. Philip Morris Inc.*, 31 A.D.3d

372 (N.Y. App. Div. 2006); *Caruolo v. A C and S, Inc.*, 1999 WL 147740 (S.D.N.Y. Mar. 18, 1999), *aff'd in part, vacated in part by Caruolo v. John Crane, Inc.*, 226 F.3d 46, 59 (2d Cir. 2000); *George v. The Celotex Corp.*, 914 F.2d 26 (2d Cir. 1990). NYCHA continues that a manufacturer who fails in those duties has a further duty to abate the hazard it created, citing *Independent School District No. 197 v. W.R. Grace Co.*, 752 F. Supp. 286 (D. Minn. 1990); *City of New York v. Lead Industries, Inc.*, 222 A.D. 2d 119, 128 (N.Y. App. Div. 1993).

NYCHA further argues that G-I's claim that NYCHA's delay in bringing its request for injunctive relief to the Court undercuts NYCHA's allegation of "irreparable harm" is without merit. Unlike a claim for preliminary injunctive relief, delay is not the critical issue in seeking permanent injunctive relief, citing *Mytee Products, Inc. v. Harris Research, Inc.*, 439 Fed. Appx. 882, 888 (Fed. Cir. 2011). NYCHA asserts here that the degree of potential harm is determinative and the irreparable harm standard is not necessarily met by a given quantity of harm, rather it is met by a showing that the quality of the harm is irremediable by a money judgment award, citing *Wilson v. Amoco Corp.*, 989 F. Supp. 1159, 1177 (D. Wy. 1998). Finally, NYCHA argues that NYCHA's costs to prevent contamination during repairs, removals or renovations involving G-I's predecessors' products are administrative expenses for which NYCHA is entitled to full payment. NYCHA states that contrary to G-I's assertion, NYCHA's claim is for restitution in equity, not at law. NYCHA contends that although a claim for restitution is often one at law for money damages owed, the Supreme Court has noted that the claim is one in equity when the demand is to restore the parties to the position that they should be based upon debtors' actions, citing *Great West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). NYCHA asserts here that its claim is under New York's law of true restitution which is premised in the concept that a defendant should not be unjustly enriched at a claimant's

expense and therefore should be required in equity to reimburse the claimant for defendant's negligence. NYCHA continues that New York's concept of restitution, as this Court has previously noted, is distinct from the theory of indemnity and is premised on the concept that a party like NYCHA which assumed the responsibility belonging to another (the Debtors) should in equity not have to bear the burden and cost of that action. *City of New York v. Lead Indus. Assn.*, 222 A.D. 2d 119, 125-26 (N.Y. App. Div. 1996).

Further, NYCHA asserts that expenses incurred post-petition qualify as administrative expenses under § 503(b)(1)(A) even when a confirmed plan does not state in explicit terms that the bankruptcy estate is to continue in existence. NYCHA cites to *In re Virginia Builders, Inc.*, 153 B.R. 729, 734 (Bankr. E.D. Va. 1993), where the court held that environmental damages occurring post-petition qualified for administrative expense priority, and *Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494 (1986), *reh'g denied*, 475 U.S. 1090 (1986) *and by O'Neill v. City of New York*, 475 U.S. 1091 (1986). NYCHA asserts that its post-petition expenses (and perhaps pre-petition expenses as well), creating causes of action for restitution and indemnity, must be determined only after a hearing at which the parties can present evidence with respect to the elements of each claim. NYCHA states that this Court's December 14, 2010 Opinion orders an evidentiary hearing to determine the facts "evidencing" NYCHA's restitution and indemnity claims. NYCHA asserts it is a "governmental unit," pursuant to 11 U.S.C. § 101(27) that has undertaken expensive precautionary measures to prevent the risk of exposures to asbestos, an "ongoing hazard." Therefore, NYCHA argues that it is not subject to the limitations found in the decision *In re G-I Holdings*, 308 B.R. 196 (Bankr. D.N.J. 2004), *aff'd in part and rev'd in part by Novak Landfill RD/RA Group v. G-I Holdings, Inc. (In re G-I Holdings)*, 2005 U.S. Dist. LEXIS 48056 (D.N.J. Mar. 29, 2005), in which the

Bankruptcy Court and United States District Court rejected Novak Landfill RD/RA Group's (a private party) claim that its post-petition clean-up costs should be treated as administrative expenses.

*G-I's Reply Memorandum of Law:*

On January 4, 2013, G-I submitted a Reply Memorandum of Law in Further Support of its Motion to Dismiss NYCHA's Complaint. ECF # 11. G-I raises four main points: (1) NYCHA's claim for injunctive relief was discharged three years ago by the Confirmation Order and Plan; (2) NYCHA cannot rely upon *Torwico* or other authority concerning environmental enforcement actions to avoid discharge of its claims; (3) even if NYCHA's claim for injunctive relief had not been discharged, NYCHA has failed to plead a viable claim for injunctive relief; and (4) NYCHA's claim for administrative expense treatment is barred and insufficiently pleaded.

As to G-I's first point, that NYCHA's claim for injunctive relief was discharged three years ago by the Confirmation Order and the Plan, G-I raises two sub-points. First, both the Code and, independently, the Confirmation Order and Plan discharged NYCHA's untimely claim for injunctive relief. The Confirmation Order and Plan discharged all claims under § 101(5) of the Code as well as "any rights to any equitable remedy." NYCHA had notice of the Plan since it appeared at the confirmation hearing and submitted an objection, which was overruled. NYCHA's demand for injunctive relief, even if not a claim under § 101(5) of the Code, is independently discharged as an "equitable remedy" by the Confirmation Order and Plan. Further, G-I states that NYCHA mistakenly relies upon § 1141(d)(6)(A), which, by reference to § 523(a), exempts from discharge any debt of a corporate debtor to a "domestic governmental unit" for money obtained by "false pretenses." However, this provision of § 1141

was enacted in 2005 and is not retroactive. Therefore, G-I contends the Court need not reach any issues relating to § 523(a) nor evaluate whether NYCHA has pleaded that it is a "domestic governmental unit" for purposes of § 1141(d)(6). However, even if NYCHA could avail itself of § 1141(d)(6), G-I asserts NYCHA's belated claim for a non-dischargeable equitable remedy is barred by laches. When G-I and the Asbestos Claimants Committee settled their litigation and agreed to the Plan terms, NYCHA had pleaded neither a non-dischargeable $500 million claim, nor a similarly costly claim for injunctive relief, either or both of which G-I asserts would have substantially altered the terms of the Plan. NYCHA's three-year lapse in filing its claim is "demonstrable prejudicial delay" necessary to show laches. Second, even if NYCHA's new claim for mandatory injunctive relief were treated as a proposed amendment to its Proof of Claim, it would still be barred by the Confirmation Order and Plan. G-I characterizes NYCHA's demand for mandatory injunctive relief not as a mere amendment to its Proof of Claim, but as a new, "multi-faceted request for relief that expands vastly the Proof of Claim's perfunctory demand for payment of money damages 'based on causes of action including, but not limited to, negligence, breach of warranty, nuisance, restitution and indemnity,'" citing NYCHA's Proof of Claim. G-I argues that NYCHA's claim is "materially different" from the claims for monetary restitution and indemnity asserted in its Proof of Claim because NYCHA now demands that G-I take over NYCHA's abatement program, familiarize itself with rules and regulations applicable to abatement of asbestos-containing materials, and perform abatements. NYCHA invokes the "excusable neglect" standard that it must meet to file a new claim. However, the excusable neglect standard explicitly assumes that a plan of reorganization is not yet confirmed, citing *Brown*, 159 B.R. at 718-19. Further, G-I argues that even if NYCHA's demand for injunctive relief were a mere amendment to its Proof of Claim, it would still be barred as numerous courts

have found that leave to amend should be denied after plan confirmation. NYCHA fails to offer a reason for waiting three years after Plan confirmation to purport to "amend" its Proof of Claim. Finally, G-I asserts that NYCHA's argument that G-I was on "notice" of NYCHA's intent to bring a claim for injunctive relief is irrelevant and inaccurate. G-I argues that NYCHA's "vague allusions" to such a demand in the January 2009 Mock Complaint (which only seeks monetary relief) cannot exempt NYCHA from actually pleading its claim or from complying with bar dates, or insulate NYCHA's new demand from the Plan's discharge provisions. G-I's second point is that NYCHA cannot rely upon *Torwico* or other authority concerning environmental enforcement actions to avoid discharge of its claims. G-I argues that the Confirmation Order and Plan discharged not only all claims under § 101(5)(A) and (B) of the Code, but also all "claims" as defined in the Plan, which include "any rights to any equitable remedy." G-I asserts that NYCHA never objected to, and NYCHA's Opposition does not address, the Plan's discharge of "any rights to any equitable remedy," but instead attempts only to remove its claim from the purview of § 101(5)(B) by incorrectly analogizing to such decisions as *Torwico*. G-I contends these decisions concern the enforcement of environmental laws by regulatory authorities wielding police powers, or claims brought pursuant to federal environmental statutes. However, G-I argues that NYCHA is not a regulatory agency, has no police powers to enforce environmental laws, and did not bring its claims under any federal or state laws that would require G-I to remove asbestos products from NYCHA's buildings.

G-I next argues that even if NYCHA's claim for injunctive relief had not been discharged, NYCHA has failed to plead a viable claim for injunctive relief. G-I reiterates its position that NYCHA's decades-long delay in seeking injunctive relief precludes the necessary showing of irreparable harm, citing *St. Croix Alumina*, 416 Fed. Appx. 204. Further, G-I argues

that NYCHA's well-documented request of reimbursement demands for past and future costs incurred to abate and replace asbestos products shows that any legally viable claim is compensable in money damages, which also precludes injunctive relief. In stating a claim for injunctive relief, G-I contends that NYCHA relies on inapplicable environmental statutes. NYCHA asserts that the alleged harm from asbestos products is "imminent" as the term is used in environmental statutes such as the Resource Conservation and Recovery Act (RCRA). However, G-I argues that asbestos products in NYCHA's properties pose a purported health or safety hazard only when they are disturbed. G-I asserts that in order to distract from NYCHA's critical failure to plead irreparable harm, NYCHA focuses on the "public interest" factor, citing authority concerning enforcement of inapplicable environmental statutes. NYCHA's Proof of Claim raises only common-law claims and cites no authority suggesting that it could have sought mandatory injunctive relief under any environmental statutes. Therefore, NYCHA's claims arise under the common law, which requires a showing of irreparable harm to sustain injunctive relief. Even so, G-I argues that NYCHA does not plead or make a compelling showing that the "public interest" will be better served by its requested mandatory injunction.

Finally, G-I argues that NYCHA's claim for administrative expense treatment is barred and insufficiently pleaded. G-I contends that NYCHA's Opposition fails to address that its administrative claim has been time-barred for three years and that it has failed to plead either that NYCHA's post-petition expenditures are "actual, necessary costs and expenses of preserving the estate" under § 503, or that such expenses "arise from a [post-petition] transaction with the debtor-in-possession." Instead, G-I asserts that the Opposition improperly asserts additional, unpleaded facts. Specifically, NYCHA now asserts that its post-petition expenses benefit the estate by relieving "G-I of its obligation to abate the hazard it created," an obligation that G-I

29

disputes. G-I cites the *Novak Landfill* decision for the proposition that the cost of remediating

contamination on property never owned by a debtor will not be accorded administrative expense

status. Further, G-I disputes NYCHA's characterization of itself as a "governmental unit." *See*

Opp. at 41-42.

*NYCHA's Sur-Reply:*

On January 11, 2013, NYCHA filed a Sur-Reply Memorandum in Support of its

Opposition to G-I's Motion to Dismiss. ECF # 12. NYCHA asserts that both G-I and this Court

have been aware of NYCHA's claim for injunctive relief since well before the November 12,

2009 Plan Confirmation, *see* ECF # 9787. Specifically, NYCHA notes a statement of this Court

from its December 14, 2014 Opinion:

> The Housing Authority also cites Second and Third Circuit Court of Appeals and
> Supreme Court cases in support of its proposition that an injunctive demand to compel a
> debtor to take remedial action of a hazardous substance like asbestos is precisely the kind
> of hazardous risk that should not be abandoned and foisted upon the public.

Case # 01-30135, ECF # 10399 at 15; *G-I Holdings*, 443 B.R. at 656. NYCHA asserts that its

demand for relief was not discharged and is in all likelihood non-dischargeable. In its Sur-

Reply, NYCHA raises four points: (1) NYCHA's demand for restitution, indemnity and

injunctive relief is not subject to the Confirmation Bar Order; (2) NYCHA's demand for relief

against Debtors is timely, especially when one considers the ongoing nature of the threat from

Debtors' defective product; (3) NYCHA is not, nor has it ever been, an agent of New York City;

and (4) balance the interests.

NYCHA argues that NYCHA's demand for restitution, indemnity and injunctive relief is

not subject to the Confirmation Bar Order for two reasons. First, a demand for environmental

injunctive relief is not a claim and therefore not subject to discharge. NYCHA argues that

pursuant to the Bankruptcy Code and Third Circuit case law, a demand for injunctive relief

30

requiring remedial action of a hazardous environmental condition is not a demand for payment

and therefore it is not a claim. NYCHA asserts its concerns regarding asbestos risk to its

residents are a classic example of a governmental entity acting under the police power to protect

the public. NYCHA contends that where an entity like NYCHA seeks equitable relief to meet

future environmental obligations to protect the public's health, safety, and welfare, both the

Third and Second Circuits have found that those claims are not subject to discharge as a Claim,

citing *Chateaugay*, 944 F.2d 997; *Torwico*, 8 F.3d 146; and *Midlantic*, 474 U.S. 494. Further,

NYCHA's demand for restitution and for indemnity are equitable remedies and not a demand for

payment. Second, 11 U.S.C. § 101(5)(B) is inapplicable because NYCHA's demand is not a

right to equitable relief for breach of performance. While G-I argues that the Confirmation

Order and Plan discharge all claims under § 101(5) of the Bankruptcy Code, NYCHA asserts that

the language contained within the Code as well as case law interpreting those provisions

demonstrate that NYCHA's claims are non-dischargeable. Section 101(5)(B) includes in the

definition of "claim" a "right to an equitable remedy for breach of performance if such breach

gives rise to a right to payment." NYCHA asserts that under New York law, breach of

performance applies solely in contract. NYCHA's claim is in equity, not contract. NYCHA

argues that a claim does not include within its ambit a demand for compliance with future

environmental obligations. Section 101(5)(B) does not incorporate just any equitable claim but

rather narrowly includes those equitable claims for breach of performance. NYCHA does not

seek relief from this Court based on breach of contract. Rather, NYCHA seeks injunctive relief

compelling remediation of future asbestos contamination. Further, NYCHA argues that a

bankruptcy court, sitting in equity, has the authority to issue an injunction such as the one

NYCHA seeks compelling Debtors to take remedial action.

NYCHA next argues that its demand for relief against the Debtors is timely, especially considering the ongoing nature of the threat from what NYCHA characterizes as Debtors' "defective product." NYCHA asserts it has acted diligently to pursue its claim from the outset. Due to Debtors' failure to notify NYCHA of the filing in bankruptcy, NYCHA argues that Debtors' argument regarding laches should fail, particularly because there is a complete lack of prejudice.

NYCHA asserts that it is not, nor has it ever been, an agent of New York City. Rather, NYCHA asserts it is an independent governmental entity established under New York's Public Housing Law, Law, Chapter 44-A, Article XIII, Title 1, Section 401.

Finally, as to balancing the interests, G-I argues that there is no need or basis for injunctive relief because NYCHA is already complying with the local, state and federal laws governing work that disturbs asbestos, and may only be entitled to money damages. However, NYCHA asserts that such a view ignores (1) the irreparable harm that would ensue if the preventative practices were not implemented, and (2) that equity requires a balancing of the interests of the parties and the public welfare.

*February 26, 2013 Hearing:*

On February 26, 2013, the Court heard arguments on G-I's Motion to Dismiss NYCHA's Complaint. Counsel for G-I stated that NYCHA's three claims essentially try to circumvent the Plan's provision that all of NYCHA's claims be treated as Class 7 pre-petition unsecured claims which get 8.6% treatment under the Plan. Such treatment for unsecured creditors forms part of the basis on which the Plan was confirmed. However, G-I's counsel argues that NYCHA, through its Complaint which recasts its claims as injunctive claims rather than as pre-petition money damages claims, seeks essentially 100% treatment either through an injunction, the

assertion of an administrative claim, or via NYCHA's contention that these are non-dischargeable claims under § 1141. G-I's counsel argued it "runs violently against the spirit of the very carefully crafted, negotiated and ultimately adjudicated and confirmed and consummated Plan of Reorganization."

Counsel for G-I asserted that the Bankruptcy Code rests on the idea that there will be a fresh start for debtors, including debtors such as G-I. He stated that G-I was not aware of any case in the country where anyone has ever asserted and received an order enjoining a confirmed debtor, an existing debtor, or an asbestos manufacturer who is not in bankruptcy to remediate asbestos in buildings.

As to NYCHA's argument that an affirmative injunctive demand is not a claim, G-I's counsel pointed to the definition of "claim" as it exists in the confirmed and consummated Plan of Reorganization. G-I's position is that the definition of "claim" in the Plan, which is incorporated in the Confirmation Order, is the only place the Court needs to look to resolve this claim completely. The Confirmation Order states: "All Claims against the Debtors' estates and the Reorganized Debtors shall be, and shall be deemed to be, discharged in full and all holders of Claims shall be precluded and enjoined from asserting against the Debtors' estates...." The term "Claim" refers to the definition of "Claim" in paragraph 1.1.43 of the Plan, which explicitly identifies any right to "any equitable remedy." Counsel stated that NYCHA's claim falls under the definition of "asbestos property damage claim" found in paragraph 1.14 of the Plan, which renders NYCHA's claim a Class 7 claim under the Plan. NYCHA has filed a proof of claim, allowance of which is pending. In this adversary proceeding, NYCHA asserts injunctive remedy. Counsel for G-I contends that the definition of "Claim" in the Plan is black and white and it specifically includes any rights to any equitable remedy.

Counsel for G-I further argued that the definition of "Claim" under the Plan includes any claim under § 101(5) of the Bankruptcy Code. The definition was confirmed in the Confirmation Order and it is *res judicata* as to NYCHA as there is no question at all that NYCHA had notice of the Plan because NYCHA filed an objection to the plan.

While G-I asserts that NYCHA has a claim under the Plan, which controls, NYCHA also has a claim under § 101(5)(B) of the Bankruptcy Code. Claims for environmental remedies brought pursuant to a statute by a government agency asserting its regulatory authority or police power to get injunctive relief under an environmental cleanup statute is not the issue before the Court. Those types of injunctive, and in some cases non-dischargeable, claims are claims that can be brought by the Environmental Protection Agency or the New Jersey Department of Environmental Protection or other state equivalents. G-I argues that NYCHA does not have such regulatory authority or police power. G-I argues that the *Torwico* and *Chateaugay* line of cases is a limited universe where there is an environmental agency using an injunctive power to halt ongoing pollution. Even those cases have drawn a distinction between where the state stands as a creditor and where the state stands as a regulator. In cases where courts have recognized that the state seeks payment for the costs of the cleanup, even if it is using an injunctive remedy to pay for the costs or to shift the cost of those cleanups, it is a claim. G-I asserts that is what is happening in the instant matter. Since there is asbestos in the buildings, when NYCHA renovates those buildings under code, the renovation will be incrementally more expensive. NYCHA seeks someone to pay for that increment. This is a right to payment and under § 101(5)(B) and a claim under the Bankruptcy Code. In the Supreme Court case *Ohio v. Kovacs*, environmental cleanup costs were treated as a claim. Further, G-I asserts that the Novak Group in the *Novak Landfill* decision is analogous to the NYCHA in this case because neither has, in

34

and of itself, any police or regulatory authority. While NYCHA may be a state agency for the purpose of providing public housing, it is not a government environmental regulator, which distinguishes the instant matter from the cases NYCHA relies on: *Torwico*, *Chateaugay*, and *Apex Oil*. In cases where the agency could do the remediation itself and then charge the debtor for the cost of remediation, it is considered a claim.

G-I further argued that even if the Code and the Plan do not stand in the way of this claim proceeding, NYCHA fails to meet the basic standard for pleading injunctive relief. Specifically, G-I asserted NYCHA fails to meet the standard of showing irreparable harm.

Counsel for G-I acknowledged that NYCHA sent a draft of a proposed complaint in January 2009 that was never filed but that contained a prayer for relief requesting the following: (1) money damages and judgment on behalf of the Plaintiff in an amount in excess of $500,000,000.00; (2) punitive damages in an amount to be determined at trial; (3) a declaratory judgment that the Plaintiff is entitled to recover from the Defendant all future expenditures incurred as a result of asbestos hazard from G-I; and (4) costs, disbursements, attorneys' fees and any other further relief the Court may deem just and proper. According to G-I's counsel, the e-mail from counsel for NYCHA which accompanied the proposed complaint stated that the "purpose in preparing the draft [complaint] is to ensure that we [NYCHA] are crystal clear as to what NYCHA is and is not claiming as the basis for its claim against G-I as [consolidated] debtor in bankruptcy." Mot. to Dismiss Hr'g Tr. 14, Feb. 26, 2013. Counsel for G-I stated that the proposed complaint does not seek injunctive relief.

As to the suggestion that there was a lack of notice in terms of the original filing of G-I's bankruptcy and the scheduling of the creditors in the initial noticing, counsel for G-I asserted that that is not relevant and the only issue is whether NYCHA had notice of the Plan and an

opportunity to object to the Plan, which NYCHA did because it submitted an objection. The Plan was confirmed and NYCHA's objection was overruled to the extent that the objection continued after a modification to the Plan. G-I's counsel asserted that "it is a pattern of missing deadlines that are really of a substantive nature" that has put NYCHA in the position it is in today. This Court has previously found that NYCHA's tort claims are time-barred. No administrative claim was asserted until three years after the administrative claim deadline. G-I's counsel asserted that NYCHA failed to identify its claim as non-dischargeable until after the deadline passed.

As to the issue of non-dischargeability, counsel argued that NYCHA relies on § 1141(d)(6)(A), a statute that does not apply to NYCHA, for its non-dischargeability claim. G-I's counsel explained that the statute as it existed prior to the 2005 BAPCPA amendments applies in the instant matter and that version of the statute does not have a subsection six (debts owed to governmental units based on false pretenses). G-I asserted that Congress was clear when it passed the statute that the amendments are not retroactive. Therefore, G-I argued that NYCHA is not entitled to assert a non-dischargeable claim pursuant to § 1141(d). G-I continued that any extension to assert non-dischargeability under § 523(a)(3)(B) should fail as untimely and on the merits as there are no false pretenses here. NYCHA was aware of the existence of asbestos in its buildings since the 1980s and has not done anything about it. Therefore, G-I argued that at this point, NYCHA's claim should be barred by laches. G-I stated that if someone came forward with a non-dischargeable $500,000,000.00 claim, it would have had a real impact on confirmation of the Plan and perhaps the Plan never would have come into fruition. The balancing of interests was based on the fact that there would not be claims that would ride through the Plan. There would not be non-dischargeable claims and there would not be claims

for an injunction for essentially 100% damages on the amount of $500,000,000.00. The Plan was predicated on asbestos property damage claims being in Class 7. Even if, in theory, NYCHA had a colorable claim under § 523, G-I argued that the claim is being raised long after the Plan was confirmed and consummated.

As to the administrative expense claim under § 503(b) raised by NYCHA, G-I stated that based on the reading of NYCHA's sur-reply brief, NYCHA is no longer pressing the argument that the claim should be accorded administrative claim status. NYCHA, at the February 23, 2013 hearing, confirmed that it had abandoned the argument for administrative expense treatment.

As to NYCHA's request for leave to amend the proof of claim, G-I argued that NYCHA has not cited any case that allows an amendment after confirmation of the plan, citing the Seventh Circuit's decision in *Holstein v. Brill*, 987 F.2d 1268 (7th Cir. 1993), where the Seventh Circuit could not find that any other court ever had allowed a claim to be increased for any reason after confirmation of a plan of reorganization.

Therefore, G-I stated that only the question of the injunctive relief claim remains after rejecting the non-dischargeability and the administrative claim arguments.

Counsel for NYCHA said that the keystone of Debtors' objection is whether NYCHA's request under § 101(5) is a demand for payment. Counsel asserted that environmental claims are sensitive ones. Counsel stated the issues to be addressed at oral argument were: (1) NYCHA's proof of claim and what exactly NYCHA did and did not argue; (2) a discussion of some of the key points of the case; (3) whether NYCHA's request falls under § 101(5) as a claim or whether this is a non-dischargeable obligation because it does not seek payment; and (4) a discussion of why Rule 7001 applies because NYCHA is asking for equitable relief.

As to NYCHA's proof of claim, NYCHA articulated that it was asking for $500,000,000.00 and that NYCHA submitted a proof of claim and an explanatory note stating, "The legal grounds for NYCHA's claims include, but are not limited to, laws of the State of New York and New Jersey," and that the proof of claim specifically identified property damage claims based on causes of action including but not limited to negligence, breach of warranty, nuisance, restitution, and indemnity. *See* Statement in Support of Proof of Claim at 2. Counsel conceded that the word "injunction" was not articulated in the document. However, the document says "claims *including but not limited to* ...." Counsel further pointed to this Court's December 14, 2010 Opinion, *see* Case # 01-30135, ECF # 10399 at 15; *In re G-I Holdings, Inc.*, 443 B.R. 645, 656 (Bankr. D.N.J. 2010), *clarified by* 472 B.R. 263 (Bankr. D.N.J. 2012), which notes that NYCHA cited to Second and Third Circuit Court of Appeals and Supreme Court cases in support of its position that an injunctive demand to compel a debtor to take remedial action of a hazardous substance like asbestos is the kind of hazardous risk that should not be abandoned and foisted upon the public. Therefore, while NYCHA did not use the phrase "injunctive relief," it has been the issue of discussion. This undercuts G-I's argument that laches applies as well as demonstrates a lack of prejudice to G-I because the same proofs are needed for NYCHA's restitution and indemnity claims as its claim for an injunction.

As to the argument that a party is not entitled to a mandatory affirmative injunction if it can be addressed through money damages, NYCHA's counsel cited to the Seventh Circuit's decision in *Apex Oil*. NYCHA's counsel asserted that the court in *Apex Oil* found that the cost of complying with an equitable decree was not a money claim and therefore is non-dischargeable. NYCHA's counsel continued that the court in *Apex Oil* also discussed *Kovacs*, which NYCHA's counsel argued was distinguishable from the instant matter because the amount

in *Kovacs* was liquidated by virtue of a judgment rendered for prior environmental violations. Counsel for NYCHA argued that here, as in *Apex Oil*, NYCHA does not have a right to payment because it does not have a current right to demand payment. In contrast, in *Kovacs*, the judgment created a current right to demand payment. Further, NYCHA could not issue a bill to G-I or GAF, even if G-I was not in bankruptcy, because NYCHA is looking at future issues like ongoing pollution and discharge problems, and not past issues, which is a core distinguishing feature in the case law.

Counsel for NYCHA pointed to the definition of "claim" in the Plan and argued that G-I did not provide in the Plan that they intended something different than § 101(5). The Court sought clarification from G-I's counsel, who stated that the Plan can extend the definition of "Claim" more broadly than the Code's definition. G-I's counsel stated that this Plan does exactly that, and the Court has the authority to confirm a Plan, and this Court did confirm a Plan that has a "Claim" definition that is broader than the Code. He reiterated G-I's position that all of these claims are covered under § 101(5)'s definition, but under any circumstances these claims are clearly covered under the "any equitable remedy" provision specifically put into the Plan. Counsel for NYCHA stated that he had assumed that G-I was bound by the definition of "Claim" under § 101(5).

Counsel for NYCHA next provided the Court with a discussion of cases involving environmental injunctions, including *Kovacs*, *Johns-Manville*, *Nicolette*, *Chateaugay*, *Torwico*, *Mark IV*, and *Apex Oil*. Counsel noted that, generally, these cases draw a distinction between past and present or ongoing harms. Counsel stated that NYCHA conceded at the beginning of the case that its tort claims, which were past claims, were likely discharged or subject to dismissal. He argued that the trend is to find that in cases where there is a future harm and a

future obligation, those matters are non-dischargeable claims. Therefore, the issue is whether it is a liquidated past claim as in *Kovacs,* or an un-liquidated future right and obligation as in *Novak Landfill.*

As to the issue of whether NYCHA seeks an injunction or whether this is actually a money damages claim, counsel cited to *Ben Franklin Hotel Associates*, 186 F.3d 301 (3d Cir. 1999), for the proposition that the mere fact that the cost of the injunction can be quantified does not mean it is a money damages claim. Counsel further stated that there is no one day when all of these remediations are going to take place and NYCHA can ask G-I to pay. The remediations are going to take place over time.

Counsel further guided the Court through the New York statutes imposing environmental regulations on NYCHA. Counsel stated that in reading the statutes, it is apparent that NYCHA is required to take precautionary safety procedures to remove asbestos-containing materials in NYCHA's buildings. Counsel cited to the Affidavit of William M. Ewing, Technical Director of Compass Environmental, Inc., stating that in the absence of those precautionary safety procedures, each removal "would cause the asbestos fibers contained in those products to immediately be released into the ambient air of the buildings settling on surfaces and continuously re-entered back into the air breathed in by persons in the buildings." *Id.* at ¶ 18. Therefore, it is NYCHA's position that this is not a remote and theoretical harm.

As to § 101(5)(b), counsel stated that he has seen no case that the "course of performance" addresses beyond contract, and NYCHA's claim here is not in contract but in equity. Even if that were not true, counsel argued that it still would have to be a right to payment to be a claim. Under restitution and indemnity, counsel stated that NYCHA has no current right to payment. NYCHA also noted that under Bankruptcy Rule 7001(7) a proceeding to obtain an

injunction or other equitable relief must be brought by an Adversary Proceeding except where the plan provides for such relief and that NYCHA should be permitted to proceed with its Complaint.

The Court requested that NYCHA address G-I's argument that NYCHA's position in this case is more akin to the Novak Group in *Novak Landfill* because NYCHA has no police or regulatory power to force compliance, or more generally is acting here as a creditor and not as a regulator. The Court stated that governmental agencies act as a regulator in certain instances and act as a creditor in others, which influences whether or not they get relief in the bankruptcy court. Counsel for NYCHA stated that in both *Kovacs* and *Novak Landfill*, there was a "done deal" and past contamination. Counsel further distinguished the cases on the basis that some are RCRA cases and others are CERCLA cases. CERCLA looks retroactively for things occurring in the past, and there is a direct right of payment for past pollution. With RCRA, there is no right to payment but a right to assess penalties for ongoing operations. Counsel argued that here, just like with RCRA, there is no right to payment. If NYCHA had a current right to payment, then it would a dischargeable claim.

Counsel for G-I first responded to NYCHA's "past versus present contamination" argument. Counsel asserted that past contamination is the issue in the instant matter because at some point in the past, G-I's predecessors sold products that allegedly were installed in NYCHA's buildings and now NYCHA claims that when it renovates its buildings it will have an incremental cost in order to comply with the law to protect against asbestos-containing materials. These are pre-petition acts, and the Plan clearly talks about claims that arise from pre-petition acts. Every asbestos-containing material that forms the basis for NYCHA's claim was placed in NYCHA's buildings some time prior to the early 1980s. At least three years before the filing of

the petition, and in all likelihood decades before, NYCHA knew or should have known that it had some form of alleged claim based on contaminants that had been deposited in the buildings. There is no ongoing pollution in the instant matter. These products have not been sold since the early 1980s at the latest. In discussing past versus present contamination, G-I asserted the relevant question is when the products were sold, not when the products are removed and replaced. There is a right to payment that arose from the past contamination that NYCHA should have acted on it if it was a valid claim. However, NYCHA did not.

G-I reiterated its position that that, notwithstanding the provisions of the Plan itself, the obligations that are asserted by NYCHA constitute a claim under § 101(5). The definition of "claim" is intentionally broad under the Bankruptcy Code, as recognized by both the Supreme Court and the Third Circuit. Counsel for G-I examined NYCHA's best case, *Torwico*. Counsel argued that in that case, a distinction was drawn between situations where the New Jersey Department of Environmental Protection acts as a creditor seeking to pass the costs of remediation and situations where those agencies are seeking to enjoin someone from continued pollution. It is a violation of the law for someone to continue to pollute in the future, and that is the distinction the Third Circuit drew in *Torwico* and that other courts have drawn in the *Chateaugay* and *Mark IV* cases. G-I argued that it is undisputed that NYCHA does not have regulatory power and it does not assert a claim under CERCLA or RCRA or any environmental statute at all. The New York State provisions cited by NYCHA make it clear that it is the building or property owner that has the responsibility to remove the asbestos containing materials. NYCHA cannot point to a statute that requires G-I to remediate. Cases relied on by NYCHA are distinguishable from the instant matter in that NYCHA is not a regulator and it is not G-I's obligation to remediate. G-I argued that this is clearly an equitable claim that gives rise

to a right to payment under the Bankruptcy Code. Further, the Plan makes it clear that NYCHA has Class 7 claims that are to be given 8.6% treatment and that all other claims under any legal theory are extinguished by the Plan and the Confirmation Order.

Counsel for NYCHA replied, disagreeing with G-I's assertion that past costs cannot give rise to a current obligation. Counsel once again referred to the uncontradicted certification of William Ewing which states that each removal in the future causes the asbestos contained to be released and reiterated that NYCHA, if it does not have statutory rights, has a common law right under New York law to seek indemnity and an injunction in this case.

LEGAL STANDARDS

### *I. Motion to Dismiss Standard*

Federal Rule of Civil Procedure 8(a), made applicable in bankruptcy court by Federal Rule of Bankruptcy Procedure 7008, requires that a "pleading that states a claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7008.

Parties seeking to dismiss a complaint for failure to state a claim may do so on motion pursuant to Federal Rule of Civil Procedure 12(b)(6), which is made applicable in bankruptcy court by Federal Rule of Bankruptcy Procedure 7012. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012.

When considering a motion to dismiss, a court must accept all well-pleaded allegations in the complaint as true, view them in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The United States Supreme Court has set forth a two-step analysis for adjudicating a motion to dismiss. *See Iqbal*, 556 U.S. at 678-79. First, a court should identify and reject labels, conclusory allegations, and formulaic recitation of the elements of a cause of action. Second, a court must draw on its judicial experience and common sense to determine whether the factual content of a complaint plausibly gives rise to an entitlement to relief. The court must infer more than the mere possibility of misconduct. *See id.* at 678-79. This does not impose a "probability requirement" at the pleading stage, but requires a showing of "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In deciding motions to dismiss under Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). A court may also take judicial notice of a prior judicial opinion. *See*

*McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

## II. *Effect of Confirmation of a Plan*

Section 1141 of the Bankruptcy Code describes the effect of confirmation of a plan in a chapter 11 case. Pursuant to § 1141(a):

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a).

Accordingly, once a plan is confirmed, the plan is binding on a broad list of entities, including creditors. The doctrine of *res judicata* applies in the bankruptcy context. *Brown v. Felsen*, 442 U.S. 127, 132 (1979). A bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect. *Stoll v. Gottlieb*, 305 U.S. 165, 170-71 (1938); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 138-39 (2009) (holding that once an order becomes final, it is *res judicata* as to parties and those in privity with them). In *In re Ampace Corp.*, the court stated that "a confirmed plan acts as a binding contract on all the parties thereto." 279 B.R. 145, 160 (Bankr. D. Del. 2002) (citing 11 U.S.C. § 1141(a)). The court explained that prior to "a plan's confirmation, creditors have the opportunity to examine the terms of the proposed plan and respond accordingly." *Id.* After the plan has been confirmed, however, such creditors are bound by the terms of the plan. *See id.*; *see also In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996).

## III. *Claims under the Bankruptcy Code*

### 1. *Generally*

The term "claim" is defined in the Bankruptcy Code at § 101(5):

> (5) The term "claim" means--
>
>> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>>
>> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

The term "claim" has been defined very broadly. In adopting the definition of "claim" found in § 101(5), the House and Senate Reports state that "[b]y this *broadest possible definition* [of the term 'claim'] ... the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case ... [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95-595, at 309. Likewise, the Supreme Court has noted that "claim" has "the broadest available definition...." *FCC v. NextWave Pers. Comms. Inc.*, 537 U.S. 293, 302 (2003); *see also In re Remington Rand*, 836 F.2d 826, 829 (3d Cir. 1988) ("Congress defined 'claim' in the broadest possible terms ..." and "unambiguously stated its intent to address all possible legal obligations in defining a bankruptcy claim...."). The Third Circuit has recognized the intentionally broad definition of "claim" in *In re Grossman's Inc.*, 607 F.3d 114 (3d Cir. 2010). *Grossman's* overruled the "accrual test" in *Matter of M. Frenville Co., Inc.*, 744 F.2d 332 (3d Cir. 1984), finding that it imposed "too narrow an interpretation of a 'claim' under the Bankruptcy Code," and held that "a 'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code". *Grossman's*, 607 F.3d at 121, 125.

## 2. Environmental Cases

In *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474

U.S. 494, 507 (1986), *reh'g denied*, 475 U.S. 1090 (1986) *and by O'Neill v. City of New York*,

475 U.S. 1091 (1986), the Supreme Court recognized the unique nature of issues associated with

environmental hazards and held that the Bankruptcy Code does not entitle a trustee to "abandon

property in contravention of a state statute or regulation that is reasonably designed to protect the

public health or safety from identified hazards." The Third Circuit has similarly recognized the

sensitivity and special nature of environmental issues and stated that "the Bankruptcy Court

should consider the unique issues associated with affirmative injunctions requiring compliance

with environmental laws." *In re Kaiser Aluminum Corp.*, 386 Fed. Appx. 201, 205 (3d Cir.

2010). A number of cases have specifically addressed the issue of whether injunctions involving

environmental hazards are claims within the meaning of § 101(5) of the Bankruptcy Code.

### a. Environmental Injunctive Relief as a "Claim"

The following is a discussion of several such cases which hold that, under certain facts,

an injunction is a "claim" and thus dischargeable in bankruptcy.

### i. *Ohio v. Kovacs*, 469 U.S. 274 (1985)

The Supreme Court addressed the issue of injunctions involving environmental hazards

as claims in *Ohio v. Kovacs*, 469 U.S. 274 (1985). In that case, the State of Ohio obtained an

injunction against Kovacs requiring him to, *inter alia*, clean up a hazardous waste disposal site.

When Kovacs failed to comply, the State obtained a court order appointing a receiver for the

property. The receiver was directed to take possession of the property, as well as other assets,

and complete the cleanup. After the receiver was appointed, but before he completed the

cleanup, Kovacs filed for bankruptcy. The State, seeking to obtain some of Kovacs' post-

bankruptcy income to be applied to the receiver's unfinished tasks, filed a motion in state court to discover Kovacs' income and assets. At Kovacs' request, the bankruptcy court stayed the state court proceedings. The State of Ohio then filed a complaint in bankruptcy court seeking a declaration that the debtor's obligation to clean up the waste disposal site was not dischargeable in bankruptcy, arguing that Kovacs' obligation to clean up the property under the State's environmental laws was not a "debt" or "liability on a claim" and thus not dischargeable. The bankruptcy court ruled against the State, and was affirmed by the District Court. The Court of Appeals also affirmed, holding that the State essentially sought only a monetary payment and that such a required payment was a liability on a claim that was dischargeable under the Bankruptcy Code. The Supreme Court agreed and held that the obligation of the debtor to comply with the state court injunction requiring it to clean up a hazardous waste disposal site was a "debt" or "liability on a claim" subject to discharge under the Bankruptcy Code, thus finding that the State of Ohio held a dischargeable, pre-petition claim.

After looking at the Bankruptcy Code's definition of "claim" and the legislative history, the Supreme Court stated that there is little doubt that the State had a right to an equitable remedy under state law and the right had been reduced to a judgment in the form of an injunction ordering the cleanup and concluded that the State had a "right to payment" and thus possessed a "claim." The Court found that "[t]here is no indication in the language of the statute [§ 101(5)] that the right to performance cannot be a claim unless it arises from a contractual arrangement." *Id.* at 279. The Court cited the Bankruptcy Court's decision:

> There is no suggestion by plaintiff [State of Ohio] that defendant [Kovacs] can render performance under the affirmative obligation other than by the payment of money. We therefore conclude that plaintiff has a claim against defendant within the meaning of 11 U.S.C. § 101(4), and that defendant owes plaintiff a debt within the meaning of 11 U.S.C. § 101(11). Furthermore, we have concluded that that debt is dischargeable.

*Id.* at 281 (quoting *In re Kovacs*, 29 B.R. 816, 818 (Bankr. S.D. Ohio 1982)). The Court acknowledged the Court of Appeals' finding that Kovacs no longer had possession of the site or control over the cleanup and that what the State sought from Kovacs money to fund the cleanup. The Supreme Court ultimately found that Kovacs' cleanup duty had been reduced to a monetary obligation, and obligation that was dischargeable in bankruptcy. *Kovacs*, 469 U.S. at 282-83.

However, the Court noted that ongoing pollution is a distinct issue and specifically stated that:

> [W]e here address ... only the affirmative duty to clean up the site and the duty to pay money to that end.... [W]e do not question that anyone in possession of the site ... must comply with the environmental laws of the State of Ohio. Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State or refuse to remove the source of such conditions.

*Id.* at 284-85.

> ii.     *Novak Landfill RD/RA Group (Other than GAF) v. G-I Holdings, Inc.*, 2005 U.S. Dist. LEXIS 48056 (D.N.J. Mar. 29, 2005)

In *Novak Landfill RD/RA Group (Other than GAF) v. G-I Holdings, Inc. and The Official Committee of Asbestos Claimants*, 2005 U.S. Dist. LEXIS 48056 (D.N.J. March 29, 2005), the Environmental Protection Agency ("EPA") ordered G-I and various other companies to clean up a landfill at which the companies disposed of hazardous waste material. Although neither G-I nor its predecessor ever owned or operated the Site, the EPA required G-I to participate in the remediation because of its use of the Site. The companies formed the Novak Landfill RD/RA Group and began remediation efforts together. Although G-I initially complied with the EPA's order, G-I ceased payments and cleanup operations when it filed for bankruptcy on January 5, 2001. The remaining members of the Novak Landfill RD/RA Group (Other than GAF) ("Novak Group") continued their efforts to remediate the landfill.

Before the bankruptcy court, the Novak Group sought an order requiring G-I to pay as an administrative expense, pursuant to § 503(b) of the Bankruptcy Code, its share of the remediation costs for the cleanup. The bankruptcy court found that the EPA's Administrative Order required G-I to remediate an imminent and substantial endangerment to human health and the environment. Thus, the Novak Group contended that the Order entitled it to an administrative expensive claim pursuant to § 503(b) of the Bankruptcy Code. The bankruptcy court had denied the Novak Group's request, *see In re G-I Holdings, Inc.*, 308 B.R. 196, 214 (Bankr. D.N.J. 2004). On appeal, the District Court affirmed the bankruptcy court's decision to the extent that it denied the Novak Group's motion to have its claim for indemnification or contribution be given priority as an administrative expense.

In addition, G-I and the Official Committee of Asbestos Creditors cross-appealed the Bankruptcy Court's denial of G-I's motion, pursuant to § 502(e)(1)(B) of the Bankruptcy Code, to disallow the Novak Group's claim for future costs. The District Court reversed the decision of the bankruptcy court to the extent that it made a final determination of the allowance or disallowance of the Novak Group's claim for future costs.

The District Court analyzed the *Torwico* case and stated that "[t]his Court agrees with the Bankruptcy Court's conclusion that '[t]he posture of this matter is markedly different from *Torwico.*'" *In re G-I*, 2005 U.S. Dist. LEXIS 48056 at 20. The Court explained:

> In *Torwico*, the EPA sought an injunction to remedy a continuing hazard. Rather than acting as a creditor, the EPA utilized its police and regulatory powers to effect a cleanup. In this appeal, however, the EPA is not seeking anything from G-I. As a private entity, the Novak Group has no police or regulatory powers to force compliance by G-I. The Novak Group is contractually obligated to remediate the Site, and it simply seeks a monetary contribution for G-I's share of the cleanup costs. Therefore, it is acting as a creditor, not a regulator. Because it is acting as a creditor, the Novak Group only has an unsecured claim.
> The Novak Group emphasizes the determination in *Torwico* that the debtor's cleanup obligations run with the waste, not with the land. This is not the issue. G-I's obligations

may run with the waste, but the Novak Group's claim still is not entitled to priority as an administrative expense. Again, the Novak Group is merely a creditor in search of repayment. In that respect, this case is more analogous to the Supreme Court's decision in *Kovacs*.

*Id.* at 20-21.

The District Court went on to analyze the *Kovacs* case and found that, just as in *Kovacs,* the Novak Group "simply want[ed] money from G-I to defray the cleanup costs." *Id.* at 22.

### b. Environmental Injunctive Relief Not a "Claim"

This Court also includes a discussion of several cases which held that, under certain facts, environmental injunctions are not "claims" and are thus non- dischargeable in bankruptcy.

#### i. In re CMC Heartland Partners, 966 F.2d 1143 (7th Cir. 1992)

In *In re CMC Heartland Partners*, 966 F.2d 1143 (7th Cir. 1992), the EPA issued an order pursuant to CERCLA § 106, 42 U.S.C. § 9606, to the debtor, who was the owner of a hazardous waste site, requiring removal and remediation activity. The debtor maintained that EPA's Order reflected an "obligation" – the duty to clean up or pay – that existed during the bankruptcy and therefore was barred. *Id.* at 1146. The Seventh Circuit Court of Appeals held that the Order, which was based on ownership of the land, survived reorganization. The court noted that "[t]o the extent [the relevant federal statutory sections] require a person to pay money today because of acts before or during the reorganization proceedings, CERCLA creates a 'claim' in bankruptcy." *Id.* However, by authorizing cleanup orders to current owners, CERCLA § 106 creates a claim "running with the land," and a "statutory obligation attached to current ownership of the land survives bankruptcy." *Id.* at 1147. The *CMC Heartland* court found in favor of EPA. Nevertheless, the court stated that:

> To avoid the conclusion that it is repackaging a forfeited claim for damages, the EPA must establish that harmful releases are threatened or ongoing...that [it] poses 'an imminent and substantial endangerment to the public health or welfare or the

environment because of an actual or threatened release of a hazardous substance.' Otherwise there is no nuisance to clean up.

*Id.*

    ii.    *In re Chateaugay*, 944 F.2d 997 (2d Cir. 1991)

In *In re Chateaugay*, 944 F.2d 997 (2d Cir. 1991), the court addressed the issue of dischargeability of environmental claims in the Chapter 11 proceedings of LTV, a diversified steel, aerospace, and energy corporation with operations in several states. The Second Circuit held first that response costs incurred by the EPA under CERCLA were prepetition "claims" dischargeable in bankruptcy regardless of when such costs were incurred, so long as such costs concerned release or threatened release of hazardous waste that occurred before the debtor filed its Chapter 11 petition. The court next considered whether injunctions, alleged to give rise to dischargeable "claims," impose a remedy for a performance breach that gives rise to a right of payment. As to such injunctions requiring the debtor to clean up a waste site, the court made the following distinction:

> EPA is entitled to seek payment if it elects to incur cleanup costs itself, but it has no authority to accept a payment from a responsible party as an alternative to continued pollution. Thus, a cleanup order that accomplishes the dual objectives of removing accumulated wastes and stopping or ameliorating ongoing pollution emanating from such wastes is not a dischargeable claim. It is true that, if in lieu of such an order, EPA had undertaken the removal itself and sued for the response costs, its action would have both removed the accumulated waste and prevented continued pollution. But it is only the first attribute of the order that can be said to remedy a breach that gives rise to a right to payment. Since there is no option to accept payment in lieu of continued pollution, *any order that to any extent ends or ameliorates continued pollution is not an order for breach of an obligation that gives rise to a right of payment and is for that reason not a 'claim.' But an order to clean up a site, to the extent that it imposes obligations distinct from any obligation to stop or ameliorate ongoing pollution, is a 'claim' if the creditor obtaining the order had the option, which CERCLA confers, to do the cleanup work itself and sue for response costs, thereby converting the injunction into a monetary obligation.*

*Id.* at 1008 (emphasis added).

The court made the explicit finding that the Supreme Court's decision in *Kovacs* does not preclude the finding that injunctive relief sought in *Chateaugay* is not a claim. *Id.* The court reasoned that:

> To the extent that CERCLA affords EPA and others a right to payment in lieu of an order directed solely at cleanup, *Kovacs* indicates that such an order is a 'claim.' And to the extent that an order is obtained under CERCLA or any other environmental statute that seeks to end or ameliorate pollution, we are satisfied that nothing in *Kovacs* permits a discharge of such obligation.

*Chateaugay*, 944 F.2d at 1009.

        iii.    *In re Torwico Elec., Inc.*, 8 F.3d 146 (3d Cir. 1993), *cert. denied by Torwico Elec., Inc. v. New Jersey Dep't of Envtl. Prot. & Energy*, 511 U.S. 1046, (1994)

*In re Torwico Electronics, Inc.*, 8 F.3d 146 (3d Cir. 1993), *cert. denied by Torwico Electronics, Inc. v. New Jersey Department of Environmental. Protection & Energy*, 511 U.S. 1046 (1994), the Chapter 11 debtor, Torwico Electronics, conducted a manufacturing business from one location until it moved to a new location in 1985. When the New Jersey Department of Environmental Protection and Energy (NJDEPE) conducted an on-site inspection of the original property, a hidden illegal seepage pit containing hazardous wastes, which were allegedly migrating into local waters, was found. NJDEPE issued an Administrative Order and Notice of Civil Administrative Penalty Assessment to Torwico relating to the violation. The Order stated:

> No obligations imposed [by this order] … are intended to constitute a debt, damage claim, penalty or other civil action which should be limited or discharged in a bankruptcy proceeding. All obligations are imposed pursuant to the police powers of the State of New Jersey, intended to protect the public health, safety, welfare, and environment.

*Id.* at 148. Torwico sought to preclude NJDEPE from imposing any liability or enforcing any obligation for environmental cleanup, asserting that such obligations to the state under the administrative order and the state statute pursuant to which it was issued were "claims" within the meaning of 11 U.S.C. § 101(5) and that because the State failed to timely file a proof of

claim, the debtor was no longer responsible for the claims. NJDEPE, on the other hand, claimed that it had "no right to payment;" rather it had only the right to enforce laws requiring the debtor to clean up the hazardous wastes it is responsible for under state law and thus what was involved was the enforcement of regulatory obligations, not bankruptcy claims.

The Third Circuit Court of Appeals analyzed the *CMC Heartland* and *Chateaugay* cases and found them to be "both persuasive and consistent." *Torwico*, 8 F.3d at 150. Applying the reasoning in those cases, the court concluded that Torwico's obligations under the administrative order did not constitute a claim. *Id.* Relying on *Kovacs*, the Third Circuit held that "[t]he state can exercise its regulatory powers and force compliance with its laws, even if the debtor must expend money to comply." *Torwico*, 8 F.3d at 150 However, "what the state cannot do is force the debtor to pay money to the state; at that point, the state is no longer acting in its role as regulator, it is acting as a creditor." *Id.* The court determined that NJDEPE had no "right to payment" but rather a right to force the debtor to comply with applicable environmental laws by remedying an existing hazard. *Id.* Further, the court determined that "[t]his is not a situation where the state is attempting to get money from the debtor but rather, it is an exercise of the state's inherent regulatory and police powers." *Id.* at 151. Accordingly, the court held that NJDEPE's attempt to force the debtor to comply with environmental laws and to clean-up hazardous waste was not a claim within the meaning of the Bankruptcy Code.

The *Torwico* case acknowledges that there are some circumstances where an injunction that requires a cleanup may still be considered a "claim," such as where the state is acting as a creditor rather than a regulator. The *Torwico* court further notes that *Chateaugay* and *CMC Heartland* "also both suggest that, at least in some circumstances, an injunction that requires a cleanup may still be considered a 'claim.'" *Torwico*, 8 F.3d at 150. The court elaborated that in

*CMC Heartland*, the court held that the CERCLA § 106 order must be in response to an ongoing and continuing threat, and not merely the repackaging of a forfeited claim for damages. *Torwico*, 8 F.3d at 150 (citing 996 F.2d at 1146-47). Similarly, in *Chateaugay* the court determined that where an order imposes "obligations distinct from any obligation to stop or ameliorate ongoing pollution," the order presents a claim if the government could have done the work itself and then sought reimbursement; under such circumstances there is a "breach of an obligation that gives rise to a right of payment." *Torwico*, 8 F.3d at 150 (citing 944 F.2d at 1008).

iv.    *United States v. Apex Oil, Co.*, 579 F.3d 734 (7th Cir. 2009), *cert. denied*, 131 S. Ct. 67 (2010)

In *United States v. Apex Oil, Co.*, 579 F.3d 734 (7th Cir. 2009), *cert. denied*, 131 S. Ct. 67 (2010), the United States brought an action under the Resource Conservation and Recovery Act (RCRA) seeking injunctive relief requiring the successor company to the owner of an oil refinery to clean up a contaminated site. The District Court made findings that millions of gallons of oil trapped not far underground were contaminating groundwater and emitting fumes that were creating hazards to health and the environment and granted the injunction. Apex Oil appealed the decision, and the Court of Appeals held that the government's claim to the injunction was not discharged in bankruptcy.

In so holding, the Circuit Court reasoned that "if the holder of an equitable claim can, in the event that the equitable remedy turns out to be unobtainable, obtain a money judgment instead, the claim is dischargeable." *Id.* at 736. In applying that principle to the matter before it, the Court held that RCRA, the basis of the government's equitable claim, "does not entitle a plaintiff to demand, in lieu of action by the defendant that may include the hiring of another firm to perform a clean-up ordered by the court, payment of clean-up costs." *Id.* RCRA "does not

authorize *any* form of monetary relief." *Id.* The Court acknowledged that "[a]lmost every equitable decree imposes a cost on the defendant, whether the decree required him to do something, as in this case, or, as is more common, to refrain from doing something." *Id.* at 737. The Court ultimately found that the plaintiff in the case, the government, was not seeking a payment of money and that the injunction that the government obtained did not entitle it to payment. *Id.* Accordingly, the injunction was not a claim, and thus was not discharged in bankruptcy.

### *IV. Leave to Amend Proofs of Claim*

Federal Rule of Bankruptcy Procedure 7015 expressly adopts Federal Rule of Civil Procedure 15, which sets out the standards for allowing amendments to pleadings in adversary proceedings. "Those standards also apply to amendments to a proof of claim." *In re Brown*, 159 B.R. 710, 714 (Bankr. D.N.J. 1993). Therefore, as the court in *Brown* held, "[a]n amendment of a timely filed claim will relate back to the date the claim was originally filed if the amendment 'arose out of the conduct, transact, or occurrence set forth or attempted to be set forth in the original' claim." *Id.* (citing Fed. R. Civ. P. 15(c)(2)).

A party seeking to amend its proof of claim after the bar date must obtain the court's permission to do so. *Brown*, 710 B.R. at 714. "The decision to allow amendments to a proof of claim is within the discretion of the Bankruptcy Court." *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 309 (3d Cir. 1999). Permission to amend proofs of claim "shall be freely given when justice so requires." *Brown*, 710 B.R. at 714; *see also In re Trans World Airlines, Inc.*, 145 F.3d 124, 140 (3d Cir. 1998). The *Brown* court explained: "This is because the purpose of Fed. R. Civ. P. 15 is to avoid the elevation of form over substance and 'to facilitate the amendment of pleadings except whether prejudice to the opposing party would result.'" 710 B.R. at 714 (citing

*United States v. Hougham*, 364 U.S. 310, 316 (1960)). The *Brown* court further articulated that "[a]mendments after the bar date, however, must be scrutinized carefully to ensure that they are truly amending the timely filed claim and not asserting a new claim." 710 B.R. at 714.

"Two rationales for allowing amendments to proofs of claim are that (1) bankruptcy courts are courts of equity, and (2) amendment of a claim are likened to an amendment of a pleading." *In re Orion Ref. Corp.*, 317 B.R. 660, 664 (Bankr. D. Del. 2004). In determining whether to allow an amendment to a proof of claim, courts look to the language in Fed. R. Civ. P. 15(c) to determine whether "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading…." Fed. R. Civ. P. 15(c). "Generally, amendments are allowed when the original claim provides notice of the existence, nature, and amount of the claim. Amendments are generally used to cure obvious defects, describe the claim with greater specificity or plead a new theory of recovery on facts of the original proof of claim." *Orion*, 317 at 664 (internal citations omitted). Stated another way, the amendment must relate back to the initial filing pursuant to Fed. R. Civ. P. 15(c) if filed after the bar date; "otherwise, it will be deemed a 'new' claim and will not be permitted." *In re MK Lombard Group I, Ltd.*, 301 B.R. 812, 816 (Bankr. E.D. Pa. 2003).

"Where the proposed amendment is more than just a correction of an error or involves something beyond the original claim, courts will generally apply an equitable test to determine whether to allow the amendment anyway." *Brown*, 159 B.R. at 715. The equitable test focuses on the issues of prejudice, delay, and bad faith. *Id.* at 716. "In reviewing these equitable concerns, this court places greatest weight on whether any prejudice would result to other parties from allowing the amendments." *Id.*

In *Holstein v. Brill,* the Seventh Circuit Court of Appeals addressed the issue of amendments of claims after confirmation of the plan. 987 F.2d 1268 (7th Cir. 1993). The court stated:

> We asked the parties whether any other court ever had allowed a claim to be increased, for *any* reasons, after confirmation of a plan of reorganization. Neither side could find such a decision under the 1978 Code, or for that matter under the 1898 Act during its final 50 years. Our search was equally fruitless.

987 F.2d at 1271. However, the court did not exclude the possibility of a post-confirmation amendment of a claim "for cogent reason" but concluded that "a creditor's inattention to the case or careless error in calculation does not suffice." *Id.* The *Holstein* court acknowledged that leave to amend should be freely granted "early in a case," citing *Foman v. Davis,* 371 U.S. 178 (1962), but stated that "passing milestones in the litigation make amendment less appropriate." *Holstein,* 987 F.2d at 1270. The court identified two such milestones: the bar date and confirmation of the plan of reorganization. *Id.* The court held that once the milestone of confirmation of the plan has been reached, "further changes should be allowed only for compelling reasons." *Id.* The court elaborated:

> Post-confirmation amendments make an end run around these provisions and may throw monkey wrenches into the proceedings, making the plan infeasible or altering the distributions to remaining creditors.... And whether or not late-breaking claims affect third parties' entitlements, they assuredly disrupt the orderly process of adjudication. To every thing there is a season, and the season for stating the amount of a debt is before the confirmation of a plan of reorganization.

*Id.* at 1270-71.

The Eleventh Circuit in *In re Winn-Dixie Stores, Inc.*, 639 F.3d 1053, 1056-57 (11th Cir. 2011), also considered the issue of post-confirmation amendment of claims and found that "post-confirmation amendment -- while not prohibited -- is not favored, and only the most compelling circumstances justify it. In the absence of such compelling reasons, a confirmed reorganization

plan should be accorded *res judicata* effect on a creditor's subsequent attempt to amend his claim." In *In re Nextmedia Group Inc.*, 2011 WL 4711997, at *3 (D. Del. Oct. 6, 2011), the court found that "[w]hile it is not impossible to amend a claim after a plan of organization has been confirmed and rendered effective, a party must generally show good cause to do so." *See also In re Szostek*, 886 F.2d 1405, 1413 (3d Cir. 1989) (concluding that once the debtors' Chapter 13 was confirmed, it became final under § 1327 and could not be challenged under § 1325(a)(5)(B)(ii) for failure to pay a creditor absent a showing of fraud under § 1330(a)). The court further noted that while the Third Circuit has not directly addressed the issue, "the Eleventh Circuit has recently followed the Seventh Circuit in holding that *res judicata* precludes post-confirmation amendments absent some 'compelling reason.'" *Nextmedia Group*, 2011 WL 4711997 at *3 (citing *Winn-Dixie Stores*, 639 F.3d at 1056).

Alternatively, if the court determines that the party is not truly seeking to amend the timely filed claim but rather is asserting a <u>new</u> claim, the court must consider such motions under the standards for filing a late claim pursuant to Bankruptcy Rule 9006(b)(1), which provides in relevant part: "[w]hen an act is required or allowed to be done at or within a specified period ... the court for cause shown may at any time ... permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1).

Accordingly, Rule 9006(b)(1) allows a court to permit late filings in a Chapter 11 case where the failure to file was the result of excusable neglect. The United States Supreme Court discussed what constitutes "excusable neglect" under Rule 9006(b)(1) in *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). In *Pioneer*, the Court first considered the meaning of the term "neglect" and determined that the term's natural meaning, which "encompasses both simple, faultless omissions to act and ...

omissions caused by carelessness" should be applied. *Id.* at 388. Next, in considering

"excusable neglect," the Supreme Court in *Pioneer* concluded that such a determination is "an

equitable one" and endorsed a balancing of the following factors: "the danger of prejudice to the

debtor, the length of delay and its potential impact on judicial proceedings, the reason for the

delay, including whether it was within the reasonable control of the movant, and whether the

movant acted in good faith." *Id.* at 395. "These factors focus on three issues: the conduct of the

claimant; prejudice to the other parties; and the interests of efficient judicial administration."

*Brown*, 710 B.R. at 718. The claimant has the burden of proving the existence of excusable

neglect. *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000).

ANALYSIS

### *I. The Plan is Binding on NYCHA.*

Pursuant to § 1141(a) of the Bankruptcy Code, once a plan has been confirmed it is binding on a

broad list of entities, including creditors. In the instant matter, NYCHA is bound by the Plan

under the principles of *res judicata. See In re Szostek*, 886 F.2d 1405, 1414 (3d Cir. 1989)

(recognizing, in the context of a Chapter 13 case, the general policy favoring the finality of

confirmed plans as evidenced by the Supreme Court's decision in *Stoll v. Gottlieb*, 305 U.S. 165,

173 (1938)).

The Plan is confirmed and has been consummated. Accordingly, this Court finds that

NYCHA is bound by the terms of the Plan.

This Court agrees with G-I's position that the definition of "claim" in the Plan, which is

incorporated in the Confirmation Order, is the only place the Court needs to look to resolve the

issue before the Court. The Confirmation Order, at ¶ 76 states:

> In accordance with and not in limitation of sections 524 and 1141 of the Bankruptcy
> Code and, except as provided in the Plan, upon the Effective Date, *all Claims against the*

60

> *Debtors' estates and the Reorganized Debtors shall be, and shall be deemed to be, discharged in full, and all holders of Claims shall be precluded and enjoined* from asserting against the Debtors' estates and the Reorganized Debtors, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim. *Upon the Effective Date, all Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtors' estates and the Reorganized Debtors.*

(emphasis added)

The term "Claim" refers to the definition of "Claim" in found in ¶ 1.1.43 of the

confirmed and consummated Plan of Reorganization in this case, which explicitly identifies any

right to any equitable remedy. Paragraph 1.1.43 of the Plan states:

> *Claim* means (i) a "claim," as defined in section 101(5) of the Bankruptcy Code, against G-I or ACI, whether or not asserted, whether or not the facts of or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim; (ii) any Environmental Claim, whether or not it constitutes a "claim" under section 101(5) of the Bankruptcy Code; and (iii) *any rights to any equitable remedy.*

(emphasis added).

Under the Plan, NYCHA has an "asbestos property damage claim" which is defined in

paragraph 1.14 of the Plan. According to paragraph 1.14 of the Plan:

> Asbestos Property Damage Claim means (i) *any Claim or remedy or liability against G-I,* whether or not such Claim, remedy, or liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, under any theory of law, equity, admiralty, or otherwise, for damages for property damage, *including but not limited to, the cost of* inspecting, maintaining, encapsulating, repairing, decontaminating, *removing or disposing of asbestos or asbestos-containing products in buildings,* other structures, or other property arising from the installation in, presence in or removal from buildings or other structures of asbestos or asbestos-containing products that was or were installed, manufactured, engineered, designed, fabricated, constructed, sold, supplied, produced, distributed, released, specified, selected, marketed, serviced, repaired, maintained, purchased, owned, used, removed, replaced or disposed of by G-I prior to the Commencement Date, or for which G-I is otherwise allegedly liable, including, without express or implied limitation,

any such Claims, remedies and liabilities for compensatory damages (such as proximate, consequential, general, and special damages) and punitive damages, and any Claim, remedy or liability for reimbursement, indemnification, subrogation and contribution, including, without limitation, any Asbestos Property Damage Contribution Claim....

(emphasis added).

The Plan Discharge Provision at paragraph 9.2 of the Plan states:

In accordance with and not in limitation of sections 524 and 1141 of the Bankruptcy Code, and except as provided in the Plan, upon the Effective Date, *all Claims against the Debtors shall be, and shall be deemed to be, discharged in full, and all holders of Claims shall be precluded and enjoined* from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim. *Upon the Effective Date, all Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtors.*

(emphasis added).

Because NYCHA has an "asbestos property damage claim," NYCHA's claim is treated as a Class 7 claim under the Plan. The Plan definition and treatment of Class 7 claims are found at paragraph 3.12 of the Plan. Pursuant to paragraph 3.12(b) of the Plan, Class 7 claims "shall receive Cash in an amount equal to 8.6% of such Allowed Claim."

Accordingly, the Court finds that NYCHA has a claim under the Plan and is bound by the terms of the Plan. Under the Plan, NYCHA has a Class 7 claim that is to be given 8.6% treatment. Any claim for asbestos property damage other than Class 7 treatment under any legal theory, including equitable remedies, is extinguished by the Plan and the Confirmation Order. Therefore, NYCHA is barred from asserting any equitable remedies in the instant adversary proceeding, including injunctive relief.

## *II. NYCHA's Request for Injunctive Relief is a Claim Under the Code.*

Because this Court has determined that the Plan is binding on NYCHA, and thus NYCHA's right to seek equitable remedies is barred, the Court need not address whether NYCHA's request for injunctive relief is a claim under the Code. Nevertheless, the Court will address this issue separately and finds that NYCHA's request for injunctive relief is a claim under § 101(5) of the Bankruptcy Code and thus dischargeable under the Debtors' confirmed Plan.

As discussed by this Court at length, some courts considering the issue of injunctions in environmental cases have found such injunctions to constitute a claim within the meaning of § 101(5) of the Bankruptcy Code while others have found such injunctions do not depending on the factual context. According to this Court's reading of those cases, the cases are not in conflict with one another. Rather, the courts agree that the obligation to address an ongoing and continuing threat imposed by a governmental agency with police or regulatory power is not a claim while other obligations *may* give rise to a claim, such as when the governmental agency is acting as a creditor rather than as a regulator.

In the instant matter, the Court finds the *Novak Landfill* case particularly instructive. *Novak Landfill* is a case similar to the one before this Court in the respect that it is not the EPA or some other government environmental agency with policy and/or regulatory powers that seeks injunctive relief from G-I. As a private entity, the Novak Group in *Novak Landfill* had no police or regulatory powers to force compliance. In the instant matter, while NYCHA may be considered a state agency for the purpose of providing public housing, NYCHA is not a government environmental regulator. There is no dispute that NYCHA has no police or regulatory powers to force compliance by G-I. In *Novak Landfill*, the Novak Group was obligated, by Order of the EPA, to remediate the site. Likewise, it is NYCHA, not G-I, that is

obligated to remediate. In fact, at oral argument, counsel for NYCHA guided the Court through the New York statutes and regulations imposing environmental obligations on NYCHA. Counsel for NYCHA acknowledged that in reading the regulations, it is apparent that <u>NYCHA</u> is required to take precautionary safety procedures to remove asbestos-containing materials in NYCHA's buildings. NYCHA cannot point to a statute that requires G-I to undertake remediation.

The instant matter is distinguishable from *Torwico* because in that case, where the Third Circuit found the injunction not be a claim and thus non-dischargeable in bankruptcy, the court made the finding that "[t]his is not a situation where the state is attempting to get money from the debtor but rather, it is an exercise of the state's inherent regulatory and police powers." 8 F.3d at 151. In contrast, in the instant matter, NYCHA is not a state actor exercising regulatory and police powers. Rather, NYCHA is a governmental agency that lacks police or regulatory powers to force compliance by G-I but that essentially seeks monetary compensation from the Debtors.

Further, relying on *Torwico* and *Kovacs*, the *Novak Landfill* court made a distinction between situations where the governmental agency acts as a creditor and situations where the governmental agency acts as a regulator. The Third Circuit in *Torwico* determined that "what the state cannot do is force the debtor to pay money to the state; at that point, the state is no longer acting in its role as regulator, it is acting as a creditor." 8 F.3d at 150. In *Novak Landfill,* the court determined that the Novak Group simply sought a monetary contribution for G-I's share of the cleanup costs and determined that the Novak Group, acting as a creditor, had an unsecured claim. Likewise, in the instant matter, NYCHA seeks a monetary contribution for G-I's share of the cleanup costs. Therefore, NYCHA is acting as a creditor, not as a regulator. NYCHA cannot be acting as a regulator because NYCHA does not have regulatory power and

the obligation to remediate is on NYCHA, not G-I. Thus, this Court finds that NYCHA, acting as a creditor and not as a regulator, has a claim pursuant to § 101(5) of the Code. As the District Court in *Novak Landfill* determined, the fact that G-I's obligations may run with the waste is not the issue. NYCHA, like the Novak Group, is acting as a creditor in search of monetary compensation from the Debtors. Therefore, the instant matter is more analogous to the Supreme Court's decision in *Kovacs.* Just as in *Kovacs,* NYCHA seeks monetary compensation from G-I to defray the cleanup costs.

This Court also determines that the injunctive relief NYCHA seeks is not to remedy ongoing environmental harm or pollution. Rather, past contamination is what is at issue in the instant matter. At some point in the past, G-I's predecessors sold products that allegedly were installed NYCHA's buildings and now NYCHA claims that when it renovates its buildings it will have an incremental cost in order to comply with the law to protect against asbestos-containing materials. Every asbestos-containing material that forms the basis for NYCHA's claim was placed in NYCHA's buildings some time prior to the early 1980s, as these products have not been sold since the early 1980s at the latest. Accordingly, the sale and placement of asbestos-containing materials in NYCHA housing are pre-petition acts, and the Plan clearly encompasses claims that arise from pre-petition acts. In discussing past versus ongoing contamination, the relevant question is when the products were sold, not when NYCHA removes the old floor alleged asbestos-containing floor tiles "VAT," an "ACM" as defined in the Complaint, and replaces it with new floor tiles. There is a right to payment that arose from the past alleged contamination. As the court in *CMC Heartland* held, the government environmental agency's order must be in response to an ongoing and continuing threat, and not merely the repackaging of a forfeited claim for damages. 996 F.2d at 1146-47. Similarly, the court in

*Chateaugay* determined that where an order imposes "obligations distinct from any obligation to stop or ameliorate ongoing pollution," the order presents a claim if the government could have done the work itself and then sought reimbursement; under such circumstances there is a "breach of an obligation that gives rise to a right of payment." 944 F.2d at 1008. In the matter before this Court, the obligation NYCHA seeks to impose is distinct from any obligation to stop or ameliorate ongoing pollution or hazards.

For the foregoing reasons, the Court determines that the injunctive relief sought by NYCHA is a claim, and accordingly, has been discharged by the Debtors' confirmed Plan except as specifically provided for in the Plan.

### III.  Request to Amend the NYCHA Proof of Claim

The issue before this Court is not mere amendment of a timely filed proof of claim. Rather, this court is faced with determining whether to allow amendment of a claim after the Plan of Reorganization has been confirmed and consummated. The Court finds the *Holstein v. Brill* case particularly instructive, where the Seventh Circuit determined that changes after the milestone of confirmation of the plan "should be allowed only for compelling reasons." 987 F.2d 1268, 1270 (7th Cir. 1993). Further, in *In re Nextmedia Group Inc.*, 2011 WL 4711997, at *3 (D. Del. Oct. 6, 2011), the court found that "[w]hile it is not impossible to amend a claim after a plan of organization has been confirmed and rendered effective, a party must generally show good cause to do so." The *Nextmedia Group* court further noted that while the Third Circuit has not directly addressed the issue, "the Eleventh Circuit has recently followed the Seventh Circuit in holding that *res judicata* precludes post-confirmation amendments absent some 'compelling reason.'" *Id.* (citing *In re Winn-Dixie Stores, Inc.*, 639 F.3d 1053, 1056 (11th Cir. 2011)).

This Court does not find that there is a compelling reason to allow amendment of NYCHA's proof of claim after the Plan of Reorganization has been confirmed and consummated. NYCHA offers no reason – much less a compelling one – for waiting three years after Plan confirmation to purport to amend its Proof of Claim. Further, this Court finds merit in G-I's position, articulated at the February 26, 2013 hearing, that an amendment in this case would not serve any utility because there is no amendment that will allow NYCHA to escape Plan treatment in this case. NYCHA is bound by the Plan under the principles of *res judicata*. The Plan governs NYCHA's claims.

The Court's analysis does not end here, however. The Court further considers whether NYCHA is not actually seeking to amend its timely filed claim but rather is asserting a <u>new</u> claim. *See In re Brown*, 159 B.R. 710, 714 (Bankr. D.N.J. 1993) ("Amendments after the bar date, however, must be scrutinized carefully to ensure that they are truly amending the timely filed claim and not asserting a new claim.") The court must consider such motions under the "excusable neglect" standard for filing a late claim pursuant to Rule 9006(b)(1), as articulated by the Supreme Court in *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). Factors to be considered include "the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.

This Court finds merit in G-I's assertion that NYCHA's demand for injunctive relief is not merely an amendment to its proof of claim, but rather a new request for relief that expands vastly the proof of claim's demand for payment of money damages "based on causes of action including, but not limited to, negligence, breach of warranty, nuisance, restitution and

indemnity." NYCHA now demands that G-I take over NYCHA's abatement program, familiarize itself with all "State of New York and City of New York rules and regulations applicable to the abatement of asbestos-containing materials from NYCHA buildings," perform abatements under NYCHA's schedule with NYCHA-approved contractors and according to NYCHA's internal rules, and "report quarterly to the Court on the progress" of the Debtors' abatement work. Compl. at 14-15. As NYCHA's new claim is materially different from the claims for monetary restitution and indemnity asserted in its Proof of Claim, the Court considered whether NYCHA has met *Pioneer*'s "excusable neglect" standard. The Court finds that prejudice to the Debtors will result if NYCHA is permitted to file a late proof of claim. Further, NYCHA waited until three years after the Plan's confirmation to raise this issue and does not offer an explanation as to "the reason for the delay, including whether it was within the reasonable control of the movant." Accordingly, NYCHA has not met the burden of proof necessary to obtain leave to file a late claim.

### *IV. Other Arguments*

#### *A. Administrative Expense Argument*

This Court need not address NYCHA's argument that its claim should receive administrative expense treatment under § 503. At the February 26, 2013 hearing, NYCHA conceded that it was abandoning the administrative expense claim argument as NYCHA recognized "the weakness of that claim." *See* Mot. to Dismiss Hr'g Tr. 19, Feb. 26, 2013.

#### *B. Inapplicability of 11 U.S.C. § 1141(d)(6)(A)*

Section 1411(d)(6)(A) of the Bankruptcy Code states:

> (6) Notwithstanding paragraph (1), the confirmation of a plan does not discharge a debtor that is a corporation from any debt—

(A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute…

11 U.S.C. § 1141(d)(6)(A).

At the February 26, 2013 hearing, NYCHA further conceded that § 1141(d)(6)(A) is not applicable to the instant matter, and thus NYCHA abandoned its assertion of non-dischargeability of claims under § 1141(d)(6)(A) and § 523(a)(2). *See* Mot. to Dismiss Hr'g Tr. 19, Feb. 26, 2013. The version of that statute that existed prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) is the version that applies in the instant case, which commenced in 2001.[1] The pre-2005 version of § 1141(d) does not include subsection six. Congress was clear when it passed the statute that the amendments were not retroactive. *See* BAPCPA § 1501(b)(1). Therefore, NYCHA is not entitled to assert the non-dischargeability of its claim pursuant to § 1141(d)(6)(A).

For all of the reasons stated above, NYCHA has not stated plausible claims in its Complaint sufficient to withstand G-I's Motion to Dismiss the Complaint.

### CONCLUSION

For the foregoing reasons, G-I Holding's Motion to Dismiss the New York City Housing Authority's Complaint for Injunctive and Declaratory Relief is GRANTED with prejudice.

An Order shall be submitted in accordance with this Opinion.

DATED:    August 12, 2014

ROSEMARY GAMBARDELLA
UNITED STATES BANKRUPTCY JUDGE

---

[1] BAPCPA applies to cases filed on or after October 17, 2005 (180 days after its Date of Enactment – April 20, 2005).